768 A.2d 715

Teresa TRUITT,

v.

Clinton A. SLACK, Personal Representative
of the Estate of Dale Slack.

No. 727, Sept. Term, 2000.

Court of Special Appeals of Maryland.

March 8, 2001.

Charles J. Brown, III, Newark, DE, for appellant.

Joseph J. Mahoney, Elkton, for appellee.

Argued before SONNER, DEBORAH S. EYLER, and JOHN J. BISHOP (retired, specially assigned) JJ.

SONNER, Judge.

Section 4–102 of the Estates and Trusts Article provides that to be valid, a will must be in writing, signed by the testator, and attested and signed by at least two witnesses. Md.Code (1991 Repl.Vol.) Est. & Trusts § 4–102. In this appeal, we are asked whether Dale Slack executed a valid will, with proper attestation, when he asked his neighbor and her daughter to sign a handwritten will only a few hours before he committed suicide. The Orphan's Court and Circuit Court for Cecil County found the will invalid. We disagree and, accordingly, reverse.

### *Factual Background*

Dorothy Morgan, Dale Slack's neighbor, testified that on July 5, 1999, Slack knocked on her front door, handed her a piece of paper, and hastily asked her to sign it. She did not read the paper, but signed it below the words, "witnessed by." She believed she was signing a neighborhood petition. As to whether Slack's signature was on the document, Morgan testified:

A.   ... I don't recall seeing it. Like I said, I didn't look at the paper that well. I just signed my name. That was it.

Q.   Okay. So you can't sit here today and say that he had not signed it at the time that he gave it to you?

A.   No, I couldn't say.

Slack thanked Morgan and left her home. He returned shortly thereafter, however, and asked to see Morgan's daughter, Sandra Bradley. Bradley came to the front door, and Slack gave her the document to sign. Unlike her mother, Bradley remembered seeing Slack's signature on the paper. The interchange between Slack and Bradley lasted for only about two minutes. Within a few hours, Slack took his life.

By the handwritten will, Slack left all of his jewelry to Teresa Truitt, appellant, and all of his fishing and camping gear, as well as "one third of all monetary holdings," to Truitt's minor son, Michael. In July 1999, Clinton A. Slack,

appellee, petitioned for probate of the estate as Slack's brother and next of kin. Truitt filed a separate petition a few months later. Both parties requested probate based on the handwritten will. Apparently, Clinton Slack and Truitt were no longer on good terms.

Following a hearing, on November 9, 1999, the orphan's court declined to admit the will to probate, concluding that Slack failed to acknowledge the will as his own, in contravention of *Van Meter v. Van Meter*, 183 Md. 614, 39 A.2d 752 (1944). It also appointed Clinton Slack as the personal representative of his brother's estate. The parties agreed that Michael Truitt should receive Slack's camping and fishing gear and $10,000.00, held in trust for post-secondary educational expenses. Truitt appealed the decision of the orphan's court, and the circuit court conducted a de novo hearing on May 2, 2000 to determine the validity of the will. Looking to *White v. Trustees of the British Museum*, 6 Bing. 310 (1829), the court found the witnesses' attestations ineffective since Slack did not tell them they were signing his will and did not direct their attention to his signature on the document.

### *Discussion*

#### A.

Attestation begins with the testator asking a witness, either by words or by deeds, to sign the will. *Greenhawk v. Quimby*, 170 Md. 280, 287–88, 184 A. 485 (1936); *Gross v. Burneston*, 91 Md. 383, 386–87, 46 A. 993 (1900); *Higgins v. Carlton*, 28 Md. 115, 141 (1868). The witness then attests by observing that the execution requirements of § 4–102 are met, namely that the will is in writing and signed by the testator. *Van Meter*, 183 Md. at 619, 39 A.2d 752. Witnesses do not need to know that the document they are signing is a will. *Casson v. Swogell*, 304 Md. 641, 654, 500 A.2d 1031 (1985). Nor must they observe the testator sign the instrument. *Van Meter*, 183 Md. at 617, 39 A.2d 752; *Etchison v. Etchison*, 53 Md. 348, 357 (1880). However, where the will is signed out of the witness's presence, the testator must acknowledge in some way that the instrument belongs to him

or her.  *Casson,* 304 Md. at 656, 500 A.2d 1031; *Van Meter,* 183 Md. at 617, 39 A.2d 752.  The two witnesses must attest and sign the will in front of the testator, § 4–102; *Tinnan v. Fitzpatrick,* 120 Md. 342, 348, 87 A. 802 (1913), but need not sign in front of each other, *O'Neal v. Jennings,* 53 Md.App. 604, 606, 455 A.2d 66 (1983).

■ Testators often include an attestation clause, which details how the will was executed, including who signed it and who witnessed them sign it.  While such a clause is not mandatory, it "preserves in permanent form a record of the facts attending the execution of the will and is prima facie evidence of the facts therein stated."  *McIntyre v. Saltysiak,* 205 Md. 415, 421, 109 A.2d 70 (1954); *see also Goroum v. Rynarzewski,* 89 Md.App. 676, 599 A.2d 843 (1991).  The presence of an attestation clause creates a presumption that the will was properly executed and safeguards against the "imperfect recollection or deliberate misrepresentation" of an attesting witness.  *Van Meter,* 183 Md. at 617–18, 39 A.2d 752.

Preliminarily, we also note that the attestation requirement of § 4–102 evolved from the English Statute of Frauds of 1677, 29 Car. 2, ch. 3, § 5.  *Casson,* 304 Md. at 648–49, 500 A.2d 1031.  The purpose of the Statute of Frauds, and thus § 4–102, was to prevent a false document from being substituted for that intended by the testator.  *White,* 6 Bing. at 312.  Our focus, then, is the testator's intent and action, and we must approach this attestation question from the perspective of Slack attempting to form a valid will, and not from Morgan's or Bradley's perspective in reading and signing the document.

## B.

■ The three cases of particular importance to this case, and which we consider in turn, are *White, Van Meter,* and *Casson.*  *White,* 6 Bing. 310, dealt with the execution of an English will in 1822.  The Statute of Frauds, the controlling law at that time, required attestation by at least three witnesses.  29 Car. 2, ch. 3, § 5 (1677).  Five months before his

death, the testator asked two witnesses to sign a "paper-writing." *White,* 6 Bing. at 310. They did so in his presence, but without seeing his signature on the document and without the testator explaining the nature of the document. Three months before his death, the testator asked a third person to sign the document and told him that it was his will. All three witnesses signed below the phrase: "In the presence of us and witnesses thereto." By special verdict, a jury found the will properly executed. *Id.* at 311.

The English court was presented with the same question on appeal with which we are faced; namely, is attestation proper where a testator does not sign his will in front of a witness, does not direct the witness's attention to his signature, and does not proclaim that the document is his will. The court affirmed the validity of the will, reasoning:

> [T]he law is now fully settled that the testator need not sign his name in the presence of the witnesses, but that a bare acknowledgment of his handwriting is a sufficient signature to make their attestation and subscription good within the statute, though such acknowledgment conveys no intimation whatever, or means of knowledge, either of the nature of the instrument, or the object of the signing; we think the facts of the present case place the testator and the witnesses in the same situation as they stood where such oral acknowledgment of signature has been made. . . .

*Id.* at 320. Thus, while the testator in *White* did not verbally identify his signature to the witnesses, he acknowledged the will as his own by asking the witnesses to sign a document that belonged to him.

In *Van Meter,* 183 Md. 614, 39 A.2d 752, two witnesses attested to the testator's will below an attestation clause. A third person also signed as witness to the testator's signature. Upon the testator's death, and her son's petition for probate of the will, one of the witnesses asserted that, notwithstanding his signature below the attestation clause, he did not in fact sign his name in front of the testator. The Orphan's Court for Allegany County thereby refused to accept the will. The Court of Appeals reversed, reiterating the presumptive validi-

ty of a will executed with an attestation clause and concluding that the third subscribing witness attested to the will, even though he did not sign below the attestation clause. As the will before us does not include an attestation clause, the relevancy of *Van Meter* for purposes of this case, is its affirmation of the common law rule that testators need not sign in front of their witnesses, as long as when they present the will to the witnesses, they acknowledge it as their act. *Id.* at 617, 39 A.2d 752.

The third case, *Casson,* 304 Md. 641, 500 A.2d 1031, clarified what a testator must do when he or she signs in the presence of witnesses. One of the witnesses in *Casson,* who watched the testator sign her will, later claimed not to have known that the document he signed was a will. In his recollection, the document did not contain testamentary language, and the testator did not refer to it as her will. On a motion for summary judgment, the circuit court ruled the will was invalid because the one witness did not know the character of the instrument when he attested and signed it. The Court of Appeals reversed. Having thoroughly reviewed the common law regarding attestation of a will, it found no general require-ment that a testator formally acknowledge—or "publicize"—an instrument as a will. *Id.* at 654, 500 A.2d 1031.

The import of these three cases conforms with the historic purpose of § 4–102 to prevent the perpetration of a fraud against the testator. At every step in the execution of a will, the testator must be in control and direct the activity. Thus, what the witnesses believe they are reading or signing is not determinative, as long as they read and sign at the testator's request. Moreover, when testators sign out of the presence of their witnesses, they must acknowledge the docu-ment as their own to prevent the witnesses from signing a fraudulent instrument. We ask the testators to manifest, in some way: "this is my document, the one I want you to sign."

### C.

Here, it is insignificant that Morgan believed she was signing a neighborhood petition. Also, while she could not

recall seeing Slack's signature on the paper, she also could not certify that Slack did not sign the paper before he gave it to her. On these facts, we will not presume that Slack "mediated a fraud against his own will." *White,* 6 Bing. at 317. The ultimate question is whether Slack acknowledged the document as his own when he presented it to Morgan and Bradley. We conclude that he did by handing them a document in his handwriting and asking them with apparent authority to sign it. While the witnesses' attestations were hurried and careless, they were sufficient under § 4–102.

**JUDGMENT REVERSED; APPELLEE TO PAY COSTS.**