McINTYRE ET AL. *v.* SALTYSIAK, INDIVIDUALLY AND AS EXECUTRIX ET AL.

[No. 24, October Term, 1954.]

416

*Decided November 12, 1954.*

418

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellants.

*Charles P. Coady, Jr.,* and *William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

Marie C. McIntyre, unmarried, who died on June 30, 1951, by her last will and testament executed on August 22, 1934, left her entire estate to her brother, Robert Emmett McIntyre, who survived the testatrix but died shortly thereafter, to the exclusion of her other relatives.

On July 13, 1951, before probate, notice of intention to *caveat* was filed. As the result of further proceedings the following issues were transmitted by the Orphans' Court of Baltimore City to the Court of Common Pleas: (1) the proper execution of the will, (2) knowledge of the contents of the will, (3) mental capacity, (4) fraud, (5) revocation of the will, and (6) undue influence. At the conclusion of the trial in that court, the trial judge directed a verdict on all the issues sustaining the validity of the will, for the reason that the *caveators,* appellants here, had not produced sufficient evidence to justify submitting the issues to the jury. The *caveators* appeal.

In the Court of Common Pleas the will here in dispute was produced from the Register of Wills' office where it had been filed. Cary D. Hall, Jr., the attorney who drew the will, testified that his signature appeared as a witness thereon. John V. Klier, also an attorney, testified that his signature was on the will as a witness. The attestation clause was as follows: "Signed, published, and declared by the above named testatrix Marie C. McIntyre as and for her last will and testament, in the presence of us, who, at her request, and in her presence, and in the presence of each other, have hereunto subscribed our names as witnesses. John V. Klier, Cary D. Hall, Jr." The will was then admitted in evidence by the trial judge.

Mr. Hall further testified that after he prepared the will he handed it to Miss McIntyre, who read it in his office on August 22, 1934. He and Mr. John V. Klier were there at the time. Miss McIntyre signed her name in the presence of the two of them. He and Mr. Klier witnessed the will at her request, in her presence and in the presence of each other. On cross-examination Mr. Hall testified that he remembered very clearly the details of the signing because on that day he went with the testatrix from his office to the Register of Wills' office to file her sister, Margaret's will. Mr. Hall later admitted that when he was first contacted by Miss Katherine McIntyre, one of the caveators, and was told that she represented the McIntyre family, he told her, as he had told Mr. Robert Emmett McIntyre on the day of the testatrix' death, that he did not remember writing it. He explains this by saying that he had written the will seventeen years before. On opening his file he found a copy of the will. After he found that copy he recalled all of the events of its execution.

Mr. John V. Klier identified his signature as a witness to the will and re-affirmed the attestation clause. He said he had been practicing law continuously since 1931. He did not remember any of the details of the signing but reiterated that the attestation clause bore his sig-

nature. He could not remember anything else about it.

The appellants claim that on account of the indefinite testimony of these two subscribing witnesses, the will should not have been allowed to come into evidence as the duly executed will of the testatrix, and that the lower court erroneously ruled as a matter of law that the will was the duly executed and witnessed last will and testament of the deceased, Marie C. McIntyre. With these contentions we do not agree. Of course, Code, (1951), Article 93, Section 347, provides that any will executed in this State is void unless it is in writing and signed by the testator, or by some other person for him in his presence and by his express direction, and is attested and subscribed in the presence of the testator by two or more credible witnesses.

It was not unusual for Mr. Hall, without consulting his records, to have forgotten that he wrote a will seventeen years previously. It would have also been very unusual for Mr. Klier to have remembered the details of the signing and witnessing of a will seventeen years before. It was said in *Conrades v. Heller,* 119 Md. 448, 461, 87 A. 28: "It is not to be expected that laymen such as these would remember all the details for seven years or more, but the attestation clause itself, which Mr. Schultz said was read must be given some effect. It is said in 40 *Cyc.* 1125, that it is *prima facie* evidence of the facts therein recited. Indeed if that were not so how could a will ever be properly probated when the witnesses are all dead or absent? By sec. 353 of Art. 93 [now Article 93, Section 384] proof of the signatures of the testator or of deceased or absent witnesses is allowed and 'shall have the same effect upon the probate of said will as if said deceased or absent witnesses had been present at said probate and had testified that said will was duly executed.' Lawyers who are called upon to witness wills sometimes have to rely on the attestation clause to remind them of what actually took place, and although that clause is not essential it is always desirable to have it written out in full." The attestation clause

signed by the two witnesses raised a *prima facie* presumption that the will was executed in accordance with the law of Maryland. The attestation of the will is the act of the witnesses in seeing that those things exist and are done which the attestation clause declares were done and which the statute requires. After the witnesses so attest the will and subscribe their names, the statute is complied with. As the attestation clause, as such, preserves in permanent form a record of the facts attending the execution of the will and is *prima facie* evidence of the facts therein stated, the burden of proof is upon the *caveators* to show by clear and convincing evidence that the facts therein stated are not true. *Van Meter v. Van Meter,* 183 Md. 614, 39 A. 2d 752. It was said in *Grant v. Curtin,* 194 Md. 363, 387, 71 A. 2d 304: "The attestation clause itself is *prima facie* evidence of due execution." *Conrades v. Heller, supra; Woodstock College of Baltimore County v. Hankey,* 129 Md. 675, 680, 99 A. 962; *Van Meter v. Van Meter, supra,* 619. It was said in *Conrades v. Heller, supra,* at page 452: "There could be no valid objection to offering the will in evidence and reading it to the jury, as was done, as is shown by the fifth bill of exceptions. The *caveatees,* as is the practice, had called the subscribing witnesses and had made out what was at least a *prima facie* case as to the execution of the will, before offering it. The *caveators* were then to proceed with their testimony, and unless the jurors had the will before them some of the testimony likely to be offered might have been meaningless and some of it could not have been properly applied." *Contest of Wills in Maryland—Sykes,* page 55. It was said in *Van Meter v. Van Meter, supra,* at page 617: "The advantage of an attestation clause is found in its evidential weight in showing that the will was properly executed. The rule is well established that an attestation clause reciting facts necessary for the valid execution of a will is *prima facie* evidence of the due execution of the will, if it bears the genuine signatures of the testator and subscribing witnesses.

*Woodstock College v. Hankey,* 129 Md. 675, 681, 99 A. 962; *Bioren v. Nesler,* '77 N. J. Eq. 560, 78 A. 201. The presence of an 'attestation clause with a recital of the formalities required by law is desirable for the purpose of furnishing presumptive evidence when the subscribing witnesses are deceased or beyond the reach of process, and serving as a safeguard against the danger of imperfect recollection or deliberate misrepresentation of the facts. 1 *Schouler on Wills, Executors and Administrators,* 6th Edition, Sec. 555. * * * To permit a subscribing witness easily to overcome his formal and solemn declaration of attestation by oral statement that he did not sign in the testator's presence would have the result of leaving every will open to attack by subscribing witnesses." The signing of the attestation clause, of course, would not prevent a witness from testifying to the contrary as to facts set out in that clause, as the courts endeavor to ascertain the truth.

It was brought out by the appellants in Mr. Hall's testimony that during the month of August, 1934, when he prepared the contested will here, he drew deeds for Miss Marie McIntyre, at her request, conveying property to the legatee in the will, Robert Emmett McIntyre, she retaining a life interest therein. These deeds were never executed. This is explained by Mr. Hall who said that Miss McIntyre later told him she did not desire to execute the deeds because she had discovered there were some marital difficulties between her brother, Robert, and his wife, and she thought it better to use only the will. The appellants also stress the fact that Mr. Hall admitted signing the testatrix' name to formal letters in giving notice to the next of kin of the late Margaret M. McIntyre, in 1934, advising them that on a certain date the will of Margaret would be presented to the Orphans' Court for probate. They argue that because he signed her name to those letters, which he described as mere formalities, he must have signed Miss McIntyre's name to her will. We do not find any such implication. When asked the point blank question, if he did in fact

sign the testatrix' name to the will, he emphatically denied that he did so, and reiterated that Marie C. McIntyre herself signed the will.

The appellants also introduced in evidence five ground rent deeds executed by the testatrix between March 31, 1948, and July 13, 1949, and also photostats of the original income tax returns signed by the testatrix from 1946 to 1950. The appellants strenuously argue that, because the will was offered in evidence bearing the signature of the testatrix and because the deeds and income tax returns were also offered in evidence, showing her signature at a later date, the case should have been submitted to the jury and they should have been permitted to compare the signatures in reaching a decision whether she signed the will. They rely on Code, (1951), Article 35, Section 11, which provides:

> "In every suit or action at law or in equity in which it may be necessary to prove the execution of any instrument of writing whatsoever, attested by a subscribing witness or witnesses, it shall be lawful to prove the execution of such instrument of writing in the same manner and by the same evidence that the same might be proved by if not attested by a subscribing witness; but this shall not apply to the proof of the execution of any last will and testament. Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury, or the court, as the case may be, as evidence of the genuineness or otherwise of the writing in dispute."

No witness was offered to attempt to prove any difference between the signature on testatrix' will, made in 1934, and the signatures on the ground rent deeds and the income tax returns at least twelve years later. The hereinbefore quoted statute certainly contemplated com-

parison by witnesses and testimony as to such comparison, and not that the mere offering of other signatures of the testatrix in evidence automatically required the issue to be submitted to the jury as to whether the signature on the will was that of the testatrix. If such were the law, in any case where a testatrix' signature was questioned, the *caveators* could have the issue submitted to the jury merely by offering the testatrix' signature made at a different time. Such was not the intent of the statute. Why the appellants did not produce a bank cashier or a hand writing expert (*Councilman v. Towson Bank,* 103 Md. 469, 479, 64 A. 358) to testify as to any difference in the signatures or why the signature on the will was not genuine, is not explained.

No evidence showed that the testatrix did not sign the will or did not know of the contents of the will. No evidence was offered to show lack of mental capacity, fraud, revocation of the will, or undue influence.

Whether sufficient evidence was offered to justify the submission of issues to the jury is a question of law for the court. If there is not sufficient evidence and the jury would only be left to speculation and conjecture on the issues submitted, the court should refuse to submit such issues, should direct a verdict, and withdraw those issues from the jury. *Kelley v. Stanton,* 141 Md. 380, 396, 397, 118 A. 863; *Malone v. Malone,* 148 Md. 200, 208, 129 A. 10; *Lutz v. Lutz,* 171 Md. 696, reported in full in 189 A. 192; *Drury v. King,* 182 Md. 64, 73, 74, 32 A. 2d 371; *Stockslager v. Hartle,* 200 Md. 544, 553, 92 A. 2d 363. To have submitted the issues here to the jury would have permitted it to weigh mere speculation and suspicion. The rulings will be affirmed.

*Rulings affirmed, with costs.*