791 A.2d 129

**Clinton A. SLACK, Personal Representative
of the Estate of Dale Slack**

v.

**Teresa TRUITT.**

**No. 44, Sept. Term, 2001.**

Court of Appeals of Maryland.

Feb. 12, 2002.

Michael J. Scibinico, II (Joseph J. Mahoney, on brief), Elkton, for Petitioner.

Charles J. Brown, III, Newark, DE, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

RAKER, J.

This is an appeal concerning the probate of a purported will. The question we must decide is whether a will signed by the testator outside the presence of witnesses should have been admitted to probate despite the fact that one of the witnesses did not know it was a will and cannot recall seeing the testator's signature on the instrument. The Orphans' Court and the Circuit Court for Cecil County denied the admission of the will to probate. Both courts denied probate because the testator, Dale Slack, failed to acknowledge to the witnesses that the will was his own instrument. The Court of Special Appeals reversed. *Truitt v. Slack*, 137 Md.App. 360, 768 A.2d 715 (2001). We shall affirm the Court of Special Appeals.

On July 5, 1999, Dale Slack, testator, went to the house of his neighbor, Dorothy Morgan, and asked her to sign a one-page handwritten document. On the bottom left hand side of the page, following the words "Witnessed By," Slack had reserved a space for witnesses' signatures. Slack did not tell Morgan that the document was a will, nor did he draw her attention to his signature. Morgan testified that the neighborhood had been having problems with development, and she thought Slack was asking her to sign a petition. Morgan also

testified that she could not recall whether Slack had signed the document prior to asking her to sign it. When asked whether she saw Slack's signature, Morgan stated, "I didn't notice. I didn't even look that long." She explained: "I don't recall seeing it. Like I said, I didn't look at the paper that well. I just signed my name. That was it."

Approximately five minutes after Ms. Morgan signed the will, Slack returned to Morgan's house and asked Morgan's daughter, Sandra Bradley, to sign it. As before, Slack did not disclose that the document was his will and did not draw Ms. Bradley's attention to his signature. Nonetheless, Bradley, unlike her mother, was able to remember that Slack had signed the document before she affixed her signature.

Approximately two hours after seeking Morgan and Bradley's signatures, Slack committed suicide. In the will signed by Morgan and Bradley, Slack had written, *inter alia:*

"To Michael Truitt who is the closest I've ever had to a son I leave all my fishing & camping gear and one third of all monetary holdings.

\* \* \*

Terri Truitt is to receive *all* my rings & other jewlry sp? She will finaly [sic] get the rings if she wants them or not!"

Pursuant to Maryland Code § 5–104 (1957, 2001 Repl.Vol., 2001 Supp.) of the Estates and Trusts Article,[1] Clinton A.

---

1. Unless otherwise noted, all subsequent statutory references are to Maryland Code (1957, 2001 Repl.Vol., 2001 Supp.) § 5–104 of the Estates and Trusts Article. Section 5–104 of the Estates and Trusts Article, titled "Order of right to letters," provides as follows:

"In granting letters in administrative or judicial probate, or in appointing a successor personal representative, or a special administrator as provided in Subtitle 4 of Title 6, the court and register shall observe the following order of priority, with any person in any one of the following paragraphs considered as a class:
(1) The personal representatives named in a will admitted to probate;
(2) The surviving spouse and children of an intestate decedent, or the surviving spouse of a testate decedent;
(3) The residuary legatees;

Slack, decedent's brother, filed a petition in the Orphans' Court for Cecil County claiming that he was entitled to priority of appointment as the personal representative of the decedent's estate because he was the decedent's next of kin. Several months later, Ms. Truitt filed a separate petition claiming that she was entitled to priority of appointment as personal representative because she was a beneficiary of the estate as well as a creditor. The Orphans' Court appointed Clinton Slack as personal representative but, as noted above, the court did not admit the will to probate.

Truitt, pursuant to Maryland Rule 6–463,[2] noted a de novo appeal to the Circuit Court for Cecil County. The Circuit Court also declined to admit the will to probate. Truitt noted a timely appeal to the Court of Special Appeals, which reversed and held:

"On these facts, we will not presume that Slack 'mediated a fraud against his own will.' The ultimate question is whether Slack acknowledged the document as his own when he presented it to Morgan and Bradley. We conclude that he did by handing them a document in his handwriting and

---

(4) The children of a testate decedent who are entitled to share in the estate;

(5) The grandchildren of the decedent who are entitled to share in the estate;

(6) Subject to §§ 3–111 and 3–112 of this article, the parents of the decedent who are entitled to share in the estate;

(7) The brothers and sisters of the decedent who are entitled to share in the estate;

(8) Other relations of the decedent who apply for administration;

(9) The largest creditor of the decedent who applies for administration;

(10) Any other person having a pecuniary interest in the proper administration of the estate of the decedent who applies for administration; or

(11) Any other person."

**2.** Maryland Rule 6–463 states as follows:

"An appeal from a judgment of the court may be taken (a) to the Court of Special Appeals in Maryland pursuant to Code, Courts Article, § 12–501, or (b) except in Harford and Montgomery Counties, to the circuit court for the county pursuant to Code, Court's Article, § 12–502."

asking them with apparent authority to sign it. While the witnesses' attestations were hurried and careless, they were sufficient under § 4–102."

*Truitt v. Slack,* 137 Md.App. at 367, 768 A.2d at 719 (citations omitted).

This Court granted Clinton Slack's petition for writ of certiorari, *Slack v. Truitt,* 364 Md. 534, 774 A.2d 408 (2001), to answer the following questions:

1. In a case in which a will is signed outside of the presence of the witnesses, must the testator either declare the document to be his will, or acknowledge his signature, to obtain a valid attestation pursuant to Estates & Trusts Article, § 4–102?

2. Whether a valid attestation requires that a witness sign a document as a witness?

Maryland Code (1957, 2001 Rep. Vol., 2001 Supp.) § 4–102 of the Estates and Trusts Article addresses the statutory requirements relating to the execution of wills in Maryland. The statute states, in pertinent part, as follows:

"Except as provided in §§ 4–103 [3] and 4–104 [4], every will shall be (1) in writing, (2) signed by the testator . . . and (3) attested and signed by two or more credible witnesses in the presence of the testator."

It is uncontested that Dale Slack handwrote his will and signed it. Likewise, there is no question that Morgan and Bradley, the witnesses, signed the will in Dale Slack's presence. Therefore, the question before us is whether the will properly was attested, and, if not, whether it may nonetheless be admitted to probate.

This Court has recognized that a presumption of due execution attaches to a will that contains the testator's signa-

---

3. Section 4–103 addresses holographic wills signed by a person in the armed forces.

4. Section 4–104 addresses wills made outside the State of Maryland.

ture and an attestation clause [5] signed by the witnesses. *See McIntyre v. Saltysiak*, 205 Md. 415, 109 A.2d 70 (1954); *Van Meter v. Van Meter*, 183 Md. 614, 39 A.2d 752 (1944); *Woodstock College v. Hankey*, 129 Md. 675, 99 A. 962 (1917); *see also* 3 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE LAW OF WILLS § 29.22, at 451–52. (3d ed.1961); Annotation, *Weight and Effect of Presumption or Inference of Due Execution of Will*, 40 A.L.R.2d 1223, 1224 (1955) (noting that "[i]t is a relatively well-established principle of the law of wills that when it is shown that a will has been attested, then ... a presumption arises that the will was duly executed"). The view "seems to prevail widely in other jurisdictions that a complete attestation clause showing observance of all statutory requirements raises a presumption of the due execution of a will, if and after the signatures of the witnesses and testator are proven to be genuine." *German Evangelical Bethel Church v. Reith*, 327 Mo. 1098, 39 S.W.2d 1057, 1061 (1931). We have held that once the presumption attaches, the burden of proof is on the caveator [6] to show by clear and convincing evidence that the facts stated in the attestation clause are untrue. *See McIntyre*, 205 Md. at 421, 109 A.2d at 72; *Van Meter*, 183 Md. at 618, 39 A.2d at 754; 40 A.L.R.2d at 1231 (1955); *see also* 3 WILLIAM J. BOWE & DOUGLAS H. PARKER, PAGE ON THE LAW OF WILLS § 29.22, at 453 (noting that "[i]f the subscribing witnesses identify their signatures, but have no recollection of having attested the instrument, or of the cir-

---

**5.** An attestation clause is a "provision at the end of an instrument (esp. a will) that is signed by the instrument's witnesses and that recites the formalities required by the jurisdiction in which the instrument might take effect (such as where the will might be probated)." BLACK'S LAW DICTIONARY 124 (7th Ed.1999). An attestation clause "is itself *prima facie* evidence of the facts therein recited." *Woodstock College v. Hankey*, 129 Md. 675, 680, 99 A. 962, 964 (1917). A formal attestation clause is not an essential part of a will. *See Van Meter v. Van Meter*, 183 Md. 614, 617, 39 A.2d 752, 754 (1944). In *Van Meter*, we noted that the validity of a will depends not upon the attestation clause, but upon conformity with the requirements of the statute and the testimony of the subscribing witnesses if they are produced and examined. *Id.*

**6.** A caveator is "[o]ne who files a caveat, esp. to challenge the validity of a will...." BLACK'S LAW DICTIONARY 215 (7th Ed.1999)

cumstances of execution, the presumption that it was properly executed will prevail in the absence of clear and satisfactory proof to the contrary.").

When the presumption of due execution attaches to a will, a court may look to surrounding circumstances to determine whether the will should be admitted to probate in the face of testimony from witnesses who swear that the formalities of the statute were not met. In *Van Meter*, this Court addressed the presumption of due execution of a will that included an attestation clause and on its face bore every indicia of proper execution. We found that the attestation clause, signed by two witnesses, raised a presumption that the will was executed in accordance with the law, and the presumption could only be overcome by clear and convincing evidence that the facts stated in the attestation clause were not true. *Van Meter*, 183 Md. at 618, 39 A.2d at 754 (1944). In light of the presumption, we reversed the Orphans' Court's refusal to admit the will to probate even though one of the witnesses who signed the attestation clause testified that he did not sign his name in the testator's presence. *Id.* at 617, 39 A.2d at 754. We also noted that "[t]he court views such contradictory testimony with great caution and scans it with grave suspicion. . . ." *Id.*

In *Orser v. Orser*, 24 N.Y. 51 (1861), the Court of Appeals of New York addressed a case in which one witness to the will died and the other testified that a number of the statutory requirements for admission to probate had not been met. Explaining that the witness' testimony was not dispositive, the court stated:

"[T]he question of due execution of a will is to be determined, like any other fact, in view of all the legitimate evidence in the case; and . . . no controlling effect is to be given to the testimony of the subscribing witnesses. Their direct participation in the transaction must, of course, give great weight to their testimony; but it is liable to be rebutted by other evidence, either direct or circumstantial. A will, duly executed upon its face, the signatures to which

are all genuine, may be admitted to probate, although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with; and even although some of them should swear positively that they were not, if the other evidence warrants the inference that they were.

*Id.* at 52.

This Court has not addressed the question of whether the presumption of due execution arises notwithstanding the absence of an attestation clause. In *Mead v. Trustees of the Presbyterian Church*, 229 Ill. 526, 82 N.E. 371 (1907), the Supreme Court of Illinois reviewed a will that contained no attestation clause but was signed by the testator and two witnesses. Neither witness could recall anything about the circumstances under which they had signed the writing. The court held that, under certain circumstances, an attestation clause was not necessary to give rise to the presumption of validity:

"In this case ... the witness Boswell wrote immediately after his name the word 'witness,' which shows clearly he understood that he was witnessing the execution of the instrument which he had signed as a witness, and the marks 'following the name of Paul and appearing immediately underneath the word 'witness,' show that witness also understood he was signing as a witness to the execution of the instrument. It was not necessary that a formal attestation clause reciting all the facts necessary to a correct execution of the will be added to the instrument to make it a valid will."

*Id.* at 373; *see also* Annotation, *Presumption as to Due Execution of Will From Attestation, With or Without Attestation Clause*, 76 A.L.R. 617, 622 (1932) (noting that there is "held to be a presumption of proper execution even though there is no attestation clause, where the attestation is merely by subscription, or followed by the word 'witnesses.' "); *German Evangelical Bethel Church v. Reith*, 327 Mo. 1098, 39 S.W.2d 1057, 1062 (1931) (noting that "[b]y subscribing the will

the attesting witnesses *impliedly* vouch for its due execution as fully or as broadly as they would do expressly if there were a complete attestation clause, though, perhaps, with less force and emphasis.").

Similarly, in *In re Pitcairn's Estate,* 6 Cal.2d 730, 59 P.2d 90 (1936), the California Supreme Court held that the presumption of due execution should not be limited to wills containing an attestation clause. Pitcairn's will was challenged on the grounds that the will was not executed with the formalities required by the statute. The court noted that it had before it "a case where the signatures of the testatrix and subscribing witnesses are genuine; the will is attested, but lacks a formal attestation clause reciting the steps in execution; the attesting witnesses, seemingly adverse but uncontradicted on the essential issues, testify to a technical failure to comply with the formalities of execution." *Id.* at 92. The issue was whether the trial court could admit the will to probate. The court held that it could.

The court began its analysis with a restatement of the "well established [rule] that a regular and complete attestation clause makes out a *prima facie* case of due execution of the will." *Id.* In rejecting the argument that the presumption is limited to cases where a full attestation clause is contained in the will, the court said:

"In our view the distinction thus drawn is illogical and the rule is too narrow. There is no need of an 'attestation clause;' it is sufficient that a will be witnessed or attested, and the recital of the steps in execution is not required. It does not seem reasonable, therefore, to have the important presumption of due execution turn upon the presence or absence of this unnecessary provision. The foundation of the presumption is the proof of genuineness of the signatures, for the instrument is then on its face a valid will. Doubtless recitals in an attestation clause are entitled to greater weight, but the logical basis for the presumption, as well as its practical necessity, is the same whether or not there is such a clause. This view has the support of a number of authorities."

*Id.* The court affirmed the judgment admitting the will to probate. *Id.* at 93.

We agree with the reasoning of those courts that hold that an attestation clause is not the *sine qua non* of the presumption of due execution. The will in the case *sub judice* bears on its face every indicia of due execution. It consists of a single page, written entirely in the testator's handwriting, and bearing the signature of the testator and two witnesses. The two witnesses, in the presence of the testator, signed beneath the words "Witnessed By." The testator's signature, which the second witness saw, was nearly adjacent to the signatures of the witnesses. Finally, the testator asked each witness to sign the paper without preventing them from reading it. The presumption of due execution attaches to such a will.

Petitioner challenges the will on the basis that the will was not properly attested to by the witnesses. Petitioner points out that the witnesses did not see the testator sign the will and the first witness, Ms. Morgan, did not know she was signing a will and cannot remember whether Slack had signed the piece of paper he handed to her. As a result, petitioner argues, the will was not properly attested.

This Court has defined attestation of a will as "the act of witnesses in seeing that those things exist and are done which the statute requires." *Van Meter,* 183 Md. at 619, 39 A.2d at 755. Addressing the attestation of a will in *McIntyre,* this Court stated:

"The attestation of the will is the act of the witnesses in seeing that those things exist and are done which the attestation clause declares were done and which the statute requires. After the witnesses so attest the will and subscribe their names, the statute is complied with. As the attestation clause, as such, preserves in permanent form a record of the facts attending the execution of the will and is *prima facie* evidence of the facts therein stated, the burden of proof is upon the *caveators* to show by clear and convincing evidence that the facts therein stated are not true."

*McIntyre,* 205 Md. at 421, 109 A.2d at 72. In *Casson v. Swogell,* 304 Md. 641, 500 A.2d 1031 (1985), we noted that "[t]o fulfill the requirement that a testator request a witness sign a document it is not necessary that the witness know it is a will." *Id.* at 654, 500 A.2d at 1038. We held that where the testator signs a will in front of the witnesses, proper attestation does not require that the testator inform the witnesses that they are signing a will. *Id.* at 656, 500 A.2d at 1039. We observed, however, that where the testator has signed a will *outside* of the presence of the witnesses, the testator must *acknowledge* his signature before the witnesses or declare the document to be his will.[7] *Id.* at 655, 500 A.2d at 1038.

In acknowledging the will to the witnesses as his or her act, the testator need not "verbally declare the instrument to be his will, if his conduct, or the paper itself, apprises the witnesses of that fact." *Woodstock College,* 129 Md. at 680, 99 A. at 964. Thus, a testator need not acknowledge a will or signature orally; acknowledgment can be accomplished by conduct alone.

In the case *sub judice,* the Court of Special Appeals in discussing the acknowledgment requirement, noted that the basic purpose of the acknowledgment requirement is to force "testators to manifest in some way: 'this is my document, the one I want you to sign.'" *Truitt,* 137 Md.App. at 366, 768 A.2d at 719. The court concluded that Slack satisfied the requirement by "handing them [the witnesses] a document in

---

7. The acknowledgment requirement has a long history. In *Casson v. Swogell,* 304 Md. 641, 500 A.2d 1031 (1985), we quoted from a leading English case, *White v. Trustees of the British Museum,* 6 Bing. 310 (1829), which states:

"It has been held in so many cases that it must now be taken to be settled law, that it is unnecessary for the testator actually to sign the will in the presence of the three witnesses who subscribe to the same; but that any acknowledgment before the witnesses that it is his signature, or any declaration before them that it is his will, is equivalent to an actual signature in their presence, and makes the attestation and subscription of the witnesses complete."

*Id.* at 318, 500 A.2d 1031.

his own handwriting and asking them with apparent authority to sign it." *Id.* at 367, 768 A.2d at 719.

Before turning to the issue of Morgan's attestation, we find that the lower courts did not err in finding that the testator acknowledged his signature to Bradley.[8] While Slack did not verbally draw Bradley's attention to his signature, he wrote the instrument in such a fashion that Bradley, in discussing the will, was later able to testify, "I looked down and saw the date written under his name and copied it from there." The testator, by his conduct, drew Bradley's attention to his signature, thereby acknowledging the will as his act. Bradley saw the testator's signature on the instrument and thus, her attestation was sufficient.

The issue of Morgan's attestation is more difficult. She testified that she did not know that the paper she was signing was a will, and could not remember whether she saw Slack's signature on the document. She testified that she thought it was a neighborhood petition. Moreover, it cannot be determined whether Slack acknowledged his signature to Morgan because Morgan cannot recall whether she saw his signature. As we have discussed, once it has been shown that a writing has been signed by the testator and attested and signed by two credible witnesses in the presence of the testator, there is a presumption of due execution. The question, then, is whether, under these circumstances, the presumption of due execution has been overcome by clear and convincing evidence.

It is important to recognize that Ms. Morgan did not testify that the testator had not signed the document. She simply could not remember seeing his signature. As the Court of Special Appeals observed, "while she could not recall seeing Slack's signature on the paper, she also could not certify that

---

8. On appeal, the Circuit Court for Cecil County stated, "[s]o basically at most what I can find is that there was one witness [Bradley] whose attestation was valid pursuant to the requirements of the statute, as well as subsequent case law."

Slack did not sign the paper before he gave it to her." *Truitt,* 137 Md.App. at 366–67, 768 A.2d at 719. Morgan's failure to remember whether Slack had signed his will, or her failure to look at the document she signed, does not suggest that the testator had not signed the will prior Morgan's signing it. Her failure to remember the signature is just that, a failure to remember.

This Court and most other state courts consistently have found that a witness' inability to remember certain events should not overcome the presumption of due execution. *See Woodstock College of Baltimore County,* 129 Md. 675, 99 A. 962 (involving a witness who signed an attestation clause but later stated that he was not told, and therefore could not swear, that the paper was a will); *In re Carey's Estate,* 56 Colo. 77, 136 P. 1175 (1913) ("A will, duly attested upon its face, the signatures to which are all genuine, may be admitted to probate, although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with. . . ."); *In re Christenson's Estate,* 128 Minn. 17, 150 N.W. 213 (1914) (stating that "[w]e know of no rule of law which makes the probate of a will depend upon the recollection, or even the veracity of a subscribing witness."); *In re Pitcairn's Estate,* 6 Cal.2d 730, 59 P.2d 90 (noting that the authorities have clearly recognized that where witnesses are unable to testify or recollect, it is proper to apply the presumption of due execution).

The text writers make clear that "[a] presumption which arises out of proof of the genuineness of the signature of the testator and the subscribing witnesses is not overcome by the fact that the subscribing witnesses, or those whose evidence can be obtained, do not remember the facts of the execution." 3 William J. Bowe & Douglas H. Parker, Page on the Law of Wills § 29.22, at 451–52. "If the subscribing witnesses identify their signatures, but have no recollection of having attested the instrument, or of the circumstances of execution, the presumption that it was properly executed will prevail in the absence of clear and satisfactory proof to the contrary." *Id.* at 453.

The reasoning behind these cases is that if subscribing witnesses were required to recollect all the formalities prescribed by statutory requirements, few wills would be immune to attack, particularly after the passage of many years. In *Mead v. Trustees of the Presbyterian Church*, the Supreme Court of Illinois addressed the will of the testator, Mead Holmes. The will contained no attestation clause but was subscribed by two witnesses, both of whom signed their name following the word "witnesses." *Mead*, 82 N.E. at 372. The court recounted the first witness' testimony as follows:

"[H]is signature was attached to the instrument; that he had no doubt but that he signed said instrument as an attesting witness at the request of Mead Holmes and in the presence of Mead Holmes and C.E. Paul [the second witness], but that he had no recollection of the transaction."

*Id.* The second witness also testified that he could not recollect certain facts:

"[H]is genuine signature was attached to the instrument shown him, which purported to be the will of Mead Holmes, and that he signed said instrument at the request of Mead Holmes . . . but that he had no recollection of anything that was said at the time he signed the instrument, or whether Boswell [the first witness] was present at the time he signed the same or not."

*Id.* Although the will contained no attestation clause and the witnesses could not recollect whether it was properly executed, the court found that the witnesses' lapse of memory was not a sufficient basis for denying probate to a will that facially bore every indicia of validity. The court stated:

"In this case, while there was no attestation clause attached to the instrument reciting all the acts necessary to be done that the will might be legally executed, we think the evidence found in this record clearly supplies the presumption arising from the presence of an attestation clause, and that there can be no question in the unbiased mind but that the instrument admitted to probate was duly executed by Mead Holmes as and for his last will, in the presence of Boswell

and Paul, who signed the same as attesting witnesses. The instrument was in the handwriting of Mead Holmes. It was therefore impossible that a spurious will was foisted upon him. It was found among his private papers after his death, duly signed and witnessed, which showed he considered it a valid will. The objects of his bounty designated in the instrument were persons and objects which had received his most tender consideration and thoughtful care in life, and there is nothing lacking in the evidence to show a legal execution of the will, save that the attesting witnesses, by lapse of time, could not recollect the facts surrounding the execution of the instrument by Mead Holmes as his last will and testament. To lay down as a rule of law that the failure of the attesting witnesses to recollect all the facts surrounding the execution of a will would defeat its probate, would be, in many instances, to defeat the probate of wills where there is no reasonable question but that they were executed by the testator or testatrix with all the formalities required by law, which is in conflict with the decisions of this and many other courts of last resort.

*Id.* at 373–74 (Citations omitted).

Finally, this Court has long held that the purpose of Maryland Code (1957, 2001 Repl.Vol., 2001 Supp.) § 4–102 of the Estates and Trusts Article was to remove uncertainty in the making of wills and to prevent the practice of imposition and fraud upon testators. *See Shane v. Wooley,* 138 Md. 75, 113 A. 652 (1921); *see also* 1 PHILIP L. SYKES, MARYLAND PRACTICE § 15, at 24–25 (1956) (noting that the "statute was passed to remove uncertainty in the making of wills and to prevent the practice of imposition and fraud upon testators.").

The circumstances in the case *sub judice* do not suggest that there was any fraud worked upon the testator. The will was found in testator's home after his death, duly signed and witnessed; this shows that the testator thought it was a valid will. The inability of a witness to remember the facts surrounding the execution of the instrument is insufficient to overcome the presumption of due execution. Accordingly, we hold that there is not clear and convincing evidence to over-

come the presumption of due execution that attaches to the will, and, therefore, the will was entitled to probate as a validly executed will.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*

BATTAGLIA, J., dissents.

BATTAGLIA, J., dissenting.

I respectfully dissent.

I differ from the majority in its definition of what constitutes sufficient proof of attestation or conversely, what standard of proof for lack of attestation must be met by the caveators to a document that does not bear an attestation clause, purporting to be a will under Section 4–102 of the Estates and Trusts Article of the Maryland Code (1974, 2001 Repl.Vol.). In so doing, I agree with the Orphans' Court and the Circuit Court for Cecil County that the testator, who signed the will outside of the presence of the witnesses to the instrument, failed to acknowledge that the document was his own instrument when he asked the witnesses to sign it, thus rendering the will invalid under Maryland law.

The majority opinion attempts to circumvent the issue of valid execution for a will, which does not bear an attestation clause and was signed by the testator outside of the presence of the witnesses, by attempting to overextend our prior holdings in *McIntyre v. Saltysiak,* 205 Md. 415, 109 A.2d 70 (1954) and *Van Meter v. Van Meter,* 183 Md. 614, 39 A.2d 752 (1944), and by heavy reliance on decisions from other jurisdictions in support of its holding that the burden of proof that the caveator had to overcome was by clear and convincing evidence, and that the caveator failed to meet the burden.[1] For

---

1. The majority relies on several decisions from sister jurisdictions in support of its holding that the will was entitled to be submitted to probate as a validly executed will. *See* Maj. Op. at 7–9, 14–16 (citing *In re Pitcairn's Estate,* 6 Cal.2d 730, 59 P.2d 90 (1936); *In re Carey's Estate,* 56 Colo. 77, 136 P. 1175, 1176 (1913)(upholding validity of will

where testator informed witnesses that the document was his will and that he was requesting their signatures as witnesses to the will even though the witnesses could not remember whether the testator's signature was present on the document at the time they signed it); *Mead v. Trustees of Presbyterian Church*, 229 Ill. 526, 82 N.E. 371, 373 (1907)(holding that the will was validly executed and admitted to probate where the evidence in the record supplied "the presumption arising from the presence of an attestation clause"); *In re Christenson's Estate*, 128 Minn. 17, 150 N.W. 213, 214 (1914)(the will at issue contained a proper attestation clause and genuine signatures of the testator and two witnesses); *German Evangelical Bethel Church of Concordia v. Reith*, 327 Mo. 1098, 39 S.W.2d 1057 (1931)(considering the validity of a will with an imperfect attestation clause); *Orser v. Orser*, 24 N.Y. 51, 52 (1861)("The result of the authorities upon the probate of wills is, that the question of the due execution of a will is to be determined, like any other fact, in view of all the legitimate evidence in the case"). For the reasons set forth below, I believe that these cases support consideration of the totality of the circumstances surrounding the execution of the will, rather than the majority's broad-sweeping presumption in favor of the validity of the will based solely on the genuineness of the signatures to the document.

In *In re Pitcairn's Estate*, 6 Cal.2d 730, 59 P.2d 90 (1936), the Supreme Court of California affirmed the judgment admitting a will to probate where the testatrix of the will signed outside of the presence of the witnesses, and where one of the witnesses testified that she was asked by the testatrix to sign a piece of paper without being informed that the paper was in fact the will of the testatrix. *Id.* at 91. The court noted that the signatures of the witnesses and the testatrix were genuine, and found that a formal attestation clause was not required. *Id.* at 92. What distinguishes this case from the case at bar is the fact that the California court considered the totality of the testimony from the witnesses and the validity of the signatures in concluding that Ms. Pitcairn validly executed her will. For example, the other witness to the will testified that the testatrix requested his signature on the document, declaring that the document set forth her "last wishes" as to how to dispose of her assets upon her death. *Id.* at 91. Under the circumstances in *Pitcairn*, there seems to be no doubt of the testatrix's intent because she unequivocally expressed her intent that the document constituted her will to at least one of the subscribing witnesses. Furthermore, the court found that the testimony of the other witness who testified that she was simply asked to sign a paper, demonstrated untrustworthy recollection because she testified that the testatrix had placed a date on the will which the witness had, in fact, written herself. *Id.* at 91–92.

Similarly, the majority misplaces its reliance on the Supreme Court of Illinois's decision in *Mead v. Trustees of the Presbyterian Church*, 229 Ill. 526, 82 N.E. 371 (1907). In *Mead*, the witnesses testified that their signatures on the will were genuine, and that they had signed the document at the testator's request. *Id.* at 372. For example, one witness testified that "he had no doubt but that he signed [the will] as an attesting witness at the request of [the testator] and in the presence of [the testator]. . . ." *Id.* The witnesses presented no testimony to the

the reasons set forth below, I find that the presumption of valid execution which attaches to a will containing an attestation clause followed by the genuine signatures of the testator and witnesses is inapplicable to wills which do not contain attestation clauses. As such, I find that the clear and convincing standard of proof used by the majority to test the caveator's case is not applicable to the facts of this case.

Section 4–102 of the Estates and Trusts Article provides: Except as provided in §§ 4–103 and 4–104, every will shall be (1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator.

To attest to something means "[t]o bear witness" or "[t]o affirm to be true or genuine; to authenticate by signing as a witness." BLACK'S LAW DICTIONARY (7th ed.1999) at 124. An

---

effect that they believed that they were signing something other than a will. Furthermore, the will in question contained markings set forth by the witnesses following their signatures which demonstrated that when they placed their signatures on the will, they understood that they were witnessing the execution of the instrument. *See id.* at 373. Although the court acknowledged the signatures of the testator and witness to be genuine, this recognition alone was insufficient for a presumption of validity; rather, it was the court's view of the evidence as a whole which supplied the presumption of valid execution to which the document normally would have been entitled had it included an attestation clause. *See id.* For, as the court stated:

> ... we think the evidence found in this record clearly supplies the presumption arising from the presence of an attestation clause, and that there can be no question in the unbiased mind but that the instrument admitted to probate was duly executed by Mead Holmes as and for his last will, in the presence of Boswell and Paul, who signed the same as attesting witnesses .... and there is nothing lacking in the evidence to show a legal execution of the will, save that the attesting witnesses, by lapse of time [approximately ten years], could not recollect the facts surrounding the execution of the instrument by Mead Holmes as his last will and testament. To lay down as a rule of law that the failure of the attesting witnesses to recollect all the facts surrounding the execution of a will would defeat its probate would be, in many instances, to defeat the probate of wills where there is no reasonable question but that they were executed by the testator or testatrix with all the formalities required by law....

*Id.* at 373–74.

attestation clause simply sets forth in writing that the formalities of Section 4–102 have been met.

Section 4–102 of the Estates and Trusts Article does not formally require the presence of an attestation clause in order to validate the will. *See Van Meter*, 183 Md. at 617, 39 A.2d at 754. A will which does not contain an attestation clause, however, cannot be entitled to the same presumption of validity as one which does, because the evidentiary weight in favor of valid execution provided by the attestation clause is not present. In the absence of an attestation clause giving rise to a rebuttable presumption of validity, the court must examine the facts of the case in light of the statutory requirements for due execution as set forth in Section 4–102 of the Estates and Trusts Article in order to assess whether the will should properly be admitted to probate. *See Shane v. Wooley*, 138 Md. 75, 80, 113 A. 652, 654 (1921)("The validity of a will, under all the authorities, is made to depend upon the instrument being properly attested and subscribed by two or more credible witnesses as provided by the statute, and unless the statute is complied with in this respect, the devises and bequests are, in the language of the statute, 'utterly void and of none effect.' ")

As a part of our consideration of whether the statutory formalities have been observed in cases where the document does not contain an attestation clause *and* where the testator signed the document outside of the presence of the witnesses, we must consider whether the testator complied with what has become known as "the acknowledgment rule." *See Van Meter*, 183 Md. at 617, 39 A.2d at 754 (clearly stating that, although the statute which is now Section 4–102 does not require the testator to sign the will in the physical presence of the two witnesses, where the testator elects to sign "out of the presence of one or more of the witnesses, *it is essential that he should in some way acknowledge it to them as his act* ")(emphasis added). The acknowledgment rule was set forth in an early British case as follows:

It has been held in so many cases that it must now be taken to be settled law, that it is unnecessary for the testator

actually to sign the will in the presence of the three witnesses who subscribe the same; but that any acknowledgment before the witnesses that it is his signature, or any declaration before them that it is his will, is equivalent to an actual signature in their presence, and makes the attestation and subscription of the witnesses complete.

*White v. Trustees of the British Museum*, 6 Bing. 310, 318 (1829); *see* 2 WILLIAM BLACKSTONE, COMMENTARIES *377 ("It has also been determined, that though the witnesses must all see the testator sign, or at least acknowledge the signing, yet they may do it at different times.")

In *Casson v. Swogell*, 304 Md. 641, 500 A.2d 1031 (1985), this Court stated, "[t]o fulfill the requirement that a testator request a witness sign a document it is not necessary that the witness know it is a will." *Casson*, 304 Md. at 654, 500 A.2d at 1038. Thus, we held, "publication is not required for the valid execution and attestation of a will, but that publication may be shown as an alternative method of proving the proper execution of a will *when the testator signed outside the presence of the witnesses.*" *Id.* at 643, 500 A.2d at 1032 (emphasis added). The facts of *Casson*, where the testator signed the document in the presence of the witnesses, are clearly distinguishable from the case at bar, where the testator signed outside of the presence of the witnesses. *See id.* at 656, 500 A.2d at 1038–39 (discussing *Woodstock College v. Hankey*, 129 Md. 675, 680–81, 99 A. 962, 964 (1917)). This Court in *Casson*, nevertheless, clearly recognized that the testator must either declare the instrument to be his own or acknowledge his signature to the witnesses when he signs outside of their presence. This Court's holding in *Casson*, thereby, was not designed to abrogate the long-standing application of the acknowledgment rule, whereby a testator who signs a will outside of the presence of the attesting witnesses must acknowledge his signature on the document and declare the document to be his own. *See Casson*, 304 Md. at 656, 500 A.2d at 1039 (stating, "[t]he acknowledgment rule applies only when the testator has signed the instrument out of the presence of the witnesses").

The majority correctly states that an attestation clause followed by the signatures of two witnesses to the execution of a will raises a rebuttable presumption that the will was executed in compliance with Maryland Code (1974, 2001 Repl. Vol.), Section 4–102 of the Estates and Trusts Article. Maj. Op. at 5; *see McIntyre,* 205 Md. at 420–21, 109 A.2d at 72; *Goroum v. Rynarzewski,* 89 Md.App. 676, 682–83, 599 A.2d 843, 847 (1991). Therefore, in cases where the purported will contains an attestation clause, "the burden of proof is upon the caveator to show by clear and convincing evidence that the facts therein stated are not true." *Van Meter,* 183 Md. at 618, 39 A.2d at 754. We have defined the clear and convincing evidence standard of proof as being greater than a preponderance of the evidence and less onerous than evidence beyond a reasonable doubt. *See 1986 Mercedes Benz 560 CE v. State,* 334 Md. 264, 283, 638 A.2d 1164, 1173 (1994).

While we have explained that an individual contesting the validity of a will *containing an attestation clause* must demonstrate by clear and convincing evidence that the facts contained in the will are not true, *see McIntyre,* 205 Md. at 421, 109 A.2d at 72, such a high burden of proof is not required to contest the validity of a document purporting to be a will which does not contain an attestation clause. *Cf. Krouse v. Krouse,* 94 Md.App. 369, 380–81, 617 A.2d 1098, 1104 (1993)(holding that the standard of proof for fraud in will caveat cases is a preponderance of the evidence, even though civil fraud ordinarily requires a higher burden of clear and convincing evidence).

In support of its holding admitting Dale Slack's will to probate, the majority emphasizes the genuineness of the testator's and witnesses' signatures. If proof of the genuineness of the signatures of the testator and the witnesses alone were deemed sufficient to establish the validity of the will, the statutory requirement that the will be "attested" would be rendered useless. *See* Md.Code, § 4–102 (requiring that a will be "*attested and signed* by two or more credible witnesses in the presence of the testator")(emphasis added). Therefore, in cases where the testator has signed a will *which does not*

*contain an attestation clause* outside of the presence of the attesting witnesses, I believe that the practice more in keeping with our case law and the statutory requirements of Section 4–102 would be for the court to evaluate the totality of the circumstances surrounding the execution of the document in order to determine if the will should properly be admitted to probate. Thus, the caveator would have to prove by a preponderance of the evidence that the execution of the will did not meet the statutory requirements for valid execution as set forth in Section 4–102 of the Estates and Trusts Article. In so doing, proof of the genuineness of the signatures of the testator and the witnesses could be significant factors in determining the validity of the will, which may be overcome by a finding that the caveator has demonstrated by a preponderance of the evidence that the statutory requirements were not met.

In the present circumstances, Dale Slack did not tell the people whose signatures appear on the will that they were "attesting" to his will. Rather, the first witness to sign the will, Dorothy Morgan, testified that Slack requested that she sign a paper for him. Morgan testified that she believed she was signing a neighborhood petition rather than a will belonging to Slack, and that she did not see his signature on the document when she signed it. As such, the circumstances indicate that Ms. Morgan could not have attested to the will as required by Section 4–102.

The second witness, Sandra Bradley, testified that Slack hurriedly requested her signature on a "piece of paper." Although Bradley did acknowledge that she saw Slack's signature on the document, she testified that she neither knew the document to be of Slack's creation, nor knew that it was a will. Bradley's testimony regarding her recognizing Slack's signature may be sufficient to validate the will, but the statute clearly states that attestation and signatures are required of *"two or more* credible witnesses" in order to satisfy the elements of a valid will. Md.Code, § 4–102 of the Estates and Trusts Article.

I believe that the Orphans' Court and the Circuit Court for Cecil County appropriately weighed the evidence set forth by petitioner and quite reasonably concluded that the statutory requirements had not been met. For example, in denying the will's admission to probate, the circuit court balanced the evidence put before it, stating, "[i]n applying equity to this situation, of course, the court cannot be ignorant of the very specific statutory law that applies in this case which I have already recited, as well as the interpretative cases rendered within the State and other jurisdictions recognized by the State, such as England's law." While it was not necessary for Mr. Slack to verbally instruct the witnesses that the paper he wished for them to sign was his *will*, the statute's mandate that the will be attested and signed by two witnesses requires that, in the absence of signing the will in their presence, the testator must apprize the witnesses of the fact that they are attesting to the validity of the execution of *the testator's document*, either through the testator's conduct or through the contents of the instrument itself. *See Van Meter*, at 617, 39 A.2d at 754. Although Dale Slack's document contained valid signatures of the testator and two witnesses, such proof is insufficient to countermand the evidence supplied by petitioner that the statutory formalities for valid execution of a will were not met. For the foregoing reasons, the Orphans' Court and the Circuit Court for Cecil County properly declined to admit the will to probate. Accordingly, I would reverse the decision of the Court of Special Appeals.