**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1665

September Term, 2014

_____

SADIE M. CASTRUCCIO

v.

THE ESTATE OF PETER ADALBERT
CASTRUCCIO, *et al.*

_____

Kehoe,
Nazarian,
Arthur,

JJ.

_____

Opinion by Arthur, J.

_____

Filed: July 28, 2016

\* The Honorable Timothy E. Meredith did not participate in the conferencing or adoption
of this opinion.

A testator put his signature on page 5 of a six-page will that had consecutive pagination, consecutive paragraph-numbering, and a single, uniform font and typeface. The witnesses signed on page 6. The will's six pages may or may not have been physically attached to one another by a staple at the time of signing.

Relying on a 1921 case that invalidated a one-page will because the witnesses did not sign the will itself, but a separate document that was not physically attached to it,[1] the testator's widow challenged the will. The Circuit Court for Anne Arundel County entered summary judgment against the widow. We affirm.

<strong>BACKGROUND</strong>

### A. The Purported Will

Dr. Peter Castruccio died on February 19, 2013, at the age of 89. He had run various businesses over the decades and, with his wife of 60 years, owned numerous pieces of income-producing real estate. The couple had no children.

John R. Greiber Jr. had been Dr. Castruccio's attorney for many years. In November 2010, Mr. Greiber deposited Dr. Castruccio's six-page will, dated September 29, 2010, for safekeeping with the register of wills. The will revoked all prior wills and codicils, including a 2008 will that Dr. Castruccio had signed.

In February 2013, a week after Dr. Castruccio's death, Mr. Greiber petitioned the register of wills to probate the 2010 will and a brief codicil thereto. Soon thereafter, those documents were admitted to probate in the orphans' court.

---

[1] *Shane v. Wooley*, 138 Md. 75 (1921).

The will, which we reproduce in the appendix to this opinion, leaves cash bequests in varying amounts to Darlene Barclay (a longtime employee of Dr. Castruccio) and to two other persons. Item 8 of the will leaves the "rest and remainder" of the estate to Mrs. Castruccio, provided that she survives Dr. Castruccio and that "she has made and executed a will prior to [Dr. Castruccio's] death." Item 10, titled "Residuary Clause," states that if Mrs. Castruccio "does not have a valid will filed with the Register of Wills of Anne Arundel County dated prior to" Dr. Castruccio's will, "all the rest and residue of" of the estate shall go to Darlene Barclay.[2]

The will's six pages are consecutively numbered as pages 1 of 6, 2 of 6, etc., through 6 of 6. After two brief, introductory paragraphs, the will contains 11, consecutively numbered "Items" or paragraphs, several of which contain consecutively numbered subparagraphs. The font and type-size are consistent throughout the document.

On page 5 of 6 of the will, Dr. Castruccio signed his name. A few spaces below the signature, the following words appear: "SIGNED, SEALED, PUBLISHED AND DECLARE [sic], BY PETER ADALBERT CASTRUCCIO."

---

[2] According to Mr. Greiber, Dr. Castruccio was concerned that Mrs. Castruccio would leave her estate to certain family members of whom he did not approve. He wanted assurances that Mrs. Castruccio would not leave her assets, or at least the assets that she received from him, to those family members. Consequently, his will conditioned Mrs. Castruccio's rights on her having made and filed a will that disclosed whether she intended to make testamentary gifts to those family members. According to Mrs. Castruccio, Dr. Castruccio did not inform her that she would receive the balance of his estate only if she had made and filed a will before the date of his death.

Farther down, the last two lines of page 5 of 6 read: "The above named individual, does declare for his Last Will and Testament this instrument, have hereunto subscribe[d] to have witness[ed] on the date **last mentioned above**, and at the location, and [. . . .]" (Bold in original.) Below that awkward language appears the pagination, which reads "5 of 6."

The next, and last, page appears to be a continuation of the language at the bottom of page 5 of 6, because it is not separated from that language by a period, semi-colon, or other punctuation mark. It reads: "I do hereby attest that the testator to be [sic] of sound mind, fully able to understand this instrument, and the testator voluntarily and freely did sign same." Below these words are the names, printed and signed, of Mr. Greiber; his daughter, Samantha Greiber; and Darlene Barclay's daughter, Kim Barclay. No other text appears on that last page other than the pagination, which, in culmination of the sequence of pages before it, reads "6 of 6."

### B.    The Petition to Caveat

By the time of Dr. Castruccio's death, Mrs. Castruccio had not filed a valid will with the register of wills. Under the terms of Dr. Castruccio's will, therefore, the residue of the estate would pass not to Mrs. Castruccio, but to Darlene Barclay.

Faced with the prospect that she would receive nothing under her late husband's will, Mrs. Castruccio filed a petition to caveat in the orphans' court. As a defendant, she named her late husband's Estate.[3]

Later, Mrs. Castruccio successfully petitioned to transmit seven issues to the circuit court for trial. *See* Md. Code (1974, 2011 Repl. Vol.), § 2-105(b) of the Estates and Trusts Article ("ET"). Denominated as Issues A through G, those issues were:

(A) whether Dr. Castruccio executed the 2010 will;

(B) whether Dr. Castruccio executed the 2010 will with the intention that it should constitute his last will and testament;

(C) whether all of the pages of the 2010 will are the genuine pages that Dr. Castruccio believed to comprise the will that he intended to execute;

(D) whether the will was procured by undue influence;

(E) whether the will was procured by fraud;

(F) whether the will was actually attested and signed by credible witnesses in Dr. Castruccio's presence; and

(G) whether the contents of the will were read by and known to Dr. Castruccio at and before the time of the execution of the will on September 29, 2010.

---

[3] Because an estate is a collection of assets and liabilities rather than a juridical entity like a corporation or an LLC, the defendant in the caveat proceeding was, technically, Mr. Greiber in his capacity as personal representative. For ease of reference, however, we shall refer to the defendant as the "Estate."

C.      **The Motions for Summary Judgment**

The Estate moved for summary judgment.  Darlene Barclay, who intervened as a

co-defendant, submitted a memorandum stating that she adopted the reasoning in the

Estate's motion.

Mrs. Castruccio opposed the motion.  In addition, she filed a cross-motion for

summary judgment as to Issue F, which concerned whether the will was actually attested

and signed by credible witnesses in the testator's presence.

## 1.      Issue F

In support of her cross-motion, Mrs. Castruccio argued that the Estate failed in its

initial burden to present prima facie evidence that the document was validly executed.

She relied principally on *Shane v. Wooley*, 138 Md. 75 (1921), which had upheld the

invalidation of a one-page will because the witnesses' signatures did not appear on the

will itself or on a document that was physically attached to it.

Citing *Shane*, Mrs. Castruccio argued that the witnessing or attestation was

invalid, (a) because the witnesses did not sign on the same page as Dr. Castruccio, and

(b) because the page containing the witnesses' signatures was not "physically connected"

to the page on which Dr. Castruccio had signed his name.  Although the statutory

provision on attestation requires only that a will be "attested and signed by two or more

credible witnesses in the presence of the testator,"[4] Mrs. Castruccio argued, in substance,

---

[4] ET § 4-102.  The witnesses must attest and sign the will in the testator's presence, but the testator may sign the will out of the witnesses' presence "if he acknowledges his signature or declares the document to be his will."  *See Casson v. Swogell*, 304 Md. 641, 655 (1985).

that *Shane* adds a kind of judicial gloss, under which the pages must be affixed to one another if the witnesses and testator do not sign on the same page.

Mrs. Castruccio presented the affidavit of her attorney, who declared that one month after the document (and its codicil) were admitted to probate, he inspected it at the register of wills, where it had been on file since November 2010. He said the document was comprised of "six separate, unattached pages," without any staples, "staple holes or other evidence of having ever been physically connected together[.]" The register made a scanned copy of the original document, which Mrs. Castruccio appended to her motion. Mrs. Castruccio also presented the affidavit of the register of wills, who stated that her office's scanner was accurate enough to capture and depict the image of staple holes.

In response, the Estate disputed Mrs. Castruccio's assertion that page 6 of 6 (containing the witnesses' signatures) was not affixed to page 5 of 6 (containing Dr. Castruccio's signature) at the time when it was signed. In addition, the Estate argued that, even assuming that the pages were not affixed to each other at that time, mechanical attachment was not required under Maryland law. It contended that the two pages could be sufficiently connected where they appear to be internally connected as a single instrument.

### 2. The Estate's Motion on the Remaining Issues

As to the remaining issues, the Estate argued that the document was indisputably valid, because Dr. Castruccio signed it in the witnesses' presence, and because the witnesses, aware of the document's contents, each signed their names in his presence. The Estate pointed to the affidavits of Mr. Greiber, Ms. Greiber, and Kim Barclay. Each

of those affiants averred that Dr. Castruccio signed the document in their presence and announced that it was his last will and testament. Each of the affiants also averred that Dr. Castruccio "was of sound mind, fully able to understand the paper he was signing, and [that] he did voluntarily and freely sign his name to it."

The Estate argued that the document carried a presumption of due execution, based on the presence, spanning pages 5 of 6 and 6 of 6 of the document, of an "attestation clause" reciting that the required elements of a validly executed will were satisfied. This clause, the Estate argued, was itself prima facie evidence of the will's presumed validity, which shifted the burden to Mrs. Castruccio to demonstrate, by clear and convincing evidence, that the facts recited in that attestation clause were not true. *See, e.g.*, *Van Meter v. Van Meter*, 183 Md. 614, 618 (1944); *see also McIntyre v. Saltysiak*, 205 Md. 415, 420-21 (1954).

Mrs. Castruccio responded that the document contained "multiple additional irregularities" that raised questions about its validity. She questioned the witnesses' credibility and "the role that Darlene [Barclay] and Mr. Greiber played" in the preparation of the will. She also questioned whether Dr. Castruccio understood what he signed and whether that document and the document submitted for probate were the same. She pointed out that the will recited that Dr. Castruccio had initialed each page, but that his initials do not appear on the document (including the page that states that he had initialed each page).

Finally, Mrs. Castruccio pointed out that Darlene Barclay had destroyed a flash drive, which "might" have contained a file related to the will. Mrs. Castruccio argued

-7-

that Ms. Barclay's actions warranted an adverse inference sufficient for the denial of the Estate's summary judgment motion. In addition, she moved for sanctions against Ms. Barclay.

### D. The Circuit Court's Rulings

On September 23, 2014, the circuit court granted the Estate's motion for summary judgment on all issues and denied Mrs. Castruccio's cross-motion for summary judgment as to Issue F, concerning attestation.

In denying Mrs. Castruccio's cross-motion, the court assumed for the sake of argument that the pages of the will were not physically attached to one another at the time of signing. Nonetheless, the court rejected Mrs. Castruccio's argument that because the witnesses had not signed on the same page as Dr. Castruccio or on a page physically connected to it, the will was invalid under *Shane v. Wooley*. The court explained that "the focus should be on a more holistic inquiry" into whether the document had been properly attested, rather than whether "at a certain point some or all of the pages were mechanically affixed to each other." It characterized Mrs. Castruccio's position as "exalt[ing] a rather mechanistic function over an inquiry that should focus on a testator's intent[.]" It declined to read *Shane v. Wooley* to "creat[e] an engine of destruction" for a "clearly unified document" that fully meets the explicit requirements of the Estates and Trusts Article, but lacks a staple.[5]

---

[5] In reaching its decision, the circuit court noted Mrs. Castruccio's inability to say whether the physical-connection rule would be satisfied by a paperclip or other temporary binder that left no visible mark on the document.

In granting the Estate's motion for summary judgment on the remaining issues, the court concluded that the Estate had established a prima facie case that the document was validly executed. The court went on to conclude that Mrs. Castruccio failed to produce the requisite clear and convincing evidence to the contrary. The court specifically rejected Mrs. Castruccio's contention that Ms. Barclay's destruction of the flash drive supplied a clear and convincing basis upon which the trier of fact could overturn the will's presumed validity.

In an order entered on October 2, 2014, the court granted the Estate's summary judgment motion as to all seven issues and denied Mrs. Castruccio's cross-motion on Issue F.[6]

---

[6] In the Order the circuit court concluded that:

A.    The six page paper writing dated September 29, 2010, captioned "Peter Adalbert Castruccio" (the "Will") was executed by Peter Adalbert Castruccio (the "Testator");

B.    The Testator executed his Will with the intention that it constituted his last will and testament;

C.    All of the pages of the Will are the genuine pages the Testator believed comprised the Will he intended to execute;

D.    The Will was not procured by undue influence;

E.    The Will was not procured by fraud;

F.    The Will was actually attested and signed by credible witnesses in the presence of the Testator; and

On appeal, Mrs. Castruccio presents several questions, which we have consolidated and rephrased as follows:

I.      Did the circuit court err in denying Mrs. Castruccio's cross-motion for summary judgment and concluding that the document was validly attested, where the testator and witnesses signed on separate pages that were not "physically connected" to each other?

II.     Did the circuit court err when it determined that the will was entitled to a presumption of due execution?

III.    Did the circuit court err in granting summary judgment in favor of the Estate without having specifically ruled on whether sanctions should be imposed against Darlene Barclay for alleged spoliation of electronic files?[7]

---

G.      The contents of the Will were read by the Testator and known to him at and before the time of the execution of the Will on September 29, 2010.

[7] Mrs. Castruccio phrased her questions in the following manner:

I.      Did the circuit court err by denying appellant's cross-motion for summary judgment and granting the estate's motion for summary judgment by finding that the will was properly witnessed and attested when the witnesses did not sign on the same page as the testator or on a page physically connected to it?

II.     Did the circuit court err in granting the estates's motion for summary judgment when it determined there were no disputes as to any material facts supporting the motion?

III.    Did the circuit court err when it determined the will was entitled to a presumption of due execution and appellant had the burden of proof by clear and convincing evidence?

IV.     Did the circuit court err in granting summary judgment without acting on appellant's motion for sanctions for destruction of

## I.       Standard of Review

When a party moves for summary judgment, the court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment entered is entitled to judgment as a matter of law." Md. Rule 2-501(f).

The issue of whether a trial court properly granted summary judgment is a question of law. *Butler v. S & S P'ship*, 435 Md. 635, 665 (2013) (citation omitted).  In an appeal from the grant of summary judgment, this Court conducts a *de novo* review to determine whether the circuit court's conclusions were legally correct. *See D'Aoust v. Diamond*, 424 Md. 549, 574 (2012).  The relevant inquiry is well known:

> When reviewing a grant of summary judgment, we determine whether the parties properly generated a dispute of material fact and, if not, whether the moving party is entitled to judgment as a matter of law.  This Court considers the record in the light most favorable to the nonmoving party and construe[s] any reasonable inferences that may be drawn from the facts against the moving party.

*Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 107-08 (2014) (citations and quotation marks omitted).

Ordinarily, to defeat summary judgment, "[a] plaintiff's claim must be supported by more than a scintilla of evidence[,] as there must be evidence upon which [a] jury could reasonably find for the plaintiff." *Id*. at 108 (citation and quotation marks omitted).

---

> evidence against defendant Darlene Barclay, concluding, without hearing the evidence, that her actions would not supply clear and convincing evidence to overcome the presumption of due execution?

However, when the plaintiff faces the added burden of producing clear and convincing evidence, as Mrs. Castruccio does in countering the presumption of due execution, the plaintiff cannot survive summary judgment on that issue unless the judge determines that the evidence meets that higher burden. *See Darcars Motorcars of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 267-70 (2004).

## II.    Validly Executed Wills

In Maryland, a testamentary document, to be validly executed, must be "(1) in writing, (2) signed by the testator, or by some other person for him, in his presence and by his express direction, and (3) attested and signed by two or more credible witnesses in the presence of the testator." ET § 4-102.[8] The burden of proving, by a preponderance of the evidence, that the statute's required elements have been met rests with the document's proponent. *Groat v. Sundberg*, 213 Md. App. 144, 152-53 (2013) (citations omitted).

One tested method for meeting this prima facie burden is to show the presence of a valid "attestation clause." A "presumption of due execution" attaches to a will that contains the testator's signature as well as an "attestation clause" signed by the witnesses.

---

[8] Section 4-102 provides two exceptions from these statutory requirements, both inapplicable here: where the will is "holographic," i.e., where it is "entirely in the handwriting of a testator who is serving in the armed services of the United States" and was "signed by the testator outside of a state of the United States, the District of Columbia, or a territory of the United States" (ET § 4-103); and where the will was executed outside the United States. ET § 4-104.

*Slack*, 368 Md. at 7-8 (citing *McIntyre v. Saltysiak*, 205 Md. at 420-22); *see also O'Neal v. Jennings*, 53 Md. App. 604, 608 (1983).[9]

A valid attestation clause, however, is not required to demonstrate a will's validity. *See Slack v. Truitt*, 368 Md. 2, 12 (2002). For example, in *Slack* the Court of Appeals held that, even without an attestation clause, a will was entitled to the presumption of due execution when it was in the testator's handwriting and bore the signatures of the testator and the witnesses, who signed their names in the testator's presence beneath the words "Witnessed By[.]" *Id.*

"Attestation," as required by section 4-102, is at issue in this case. Attestation is "'the act of witnesses in seeing that those things exist and are done which the statute requires.'" *Slack*, 368 Md. at 12 (quoting *Van Meter*, 183 Md. at 619). It begins with the testator asking the witnesses, either by words or deeds, to sign the will. *Greenhawk v. Quimby*, 170 Md. 280, 287-88 (1936). Witnesses need not know the document is a will as long as they see the testator sign it (*Casson v. Swogell*, 304 Md. 641, 654 (1985)), nor must they observe the testator signing it as long as he or she acknowledges the signature or informs the witnesses that the document is a will. *Van Meter*, 183 Md. at 617. The

---

[9] "An attestation clause is a 'provision at the end of an instrument (esp. a will) that is signed by the instrument's witnesses and that recites the formalities required by the jurisdiction in which the instrument might take effect (such as where the will might be probated).'" *Slack*, 368 Md. at 8 n.5 (citation omitted). "A formal attestation clause is . . . 'itself prima facie evidence of the facts therein recited.'" *Id.* (citations omitted); *see Van Meter*, 183 Md. at 617 ("[t]he advantage of an attestation clause is found in its evidential weight in showing that the will was properly executed").

witnesses must, however, sign the will in the testator's presence, i.e., within the testator's unobstructed range of vision. *Groat*, 213 Md. App. at 161-62.

### III. Must the Attestation be "Physically Connected" to the Will?

Mrs. Castruccio argues that the Estate failed to make a prima facie case of a valid attestation, as the witnesses' signatures appear neither on the same page as Dr. Castruccio's nor on a page that is "physically connected" to it.

The Estate agrees that the witnesses' signatures and Dr. Castruccio's signature appear on separate pages, but it insists that Maryland law does not mandate that the separate pages must be "physically connected" by mechanical attachment. Even where the pages are unaffixed to each other, the Estate argues, it suffices if they are connected by some internal sense.

#### A. *Shane v. Wooley*

In *Shane v. Wooley*, 138 Md. at 79-80, the testatrix "signed her name at the foot of the alleged will, which was contained on one sheet of paper[.]" After folding the will, testator "placed it in an envelope and sealed it." *Id.* at 80. "The attestation clause and the signature of the witnesses were then written across the sealed portion of the envelope, on the outside thereof." *Id.* The signed paper inside the envelope "was not dated nor witnessed on the paper itself[.]" *Id.* at 76.

The orphans' court, upon petition, held that the caveators were entitled to a decree revoking the order that had admitted the will to probate. On appeal from that decision, the Court of Appeals affirmed. The Court stated:

> While there is no provision of the statute of this state, which requires, in terms, that the attestation clause and the signatures of the witnesses shall be at the end of the will, or at any particular place of the will, . . . the *weight of authority, however, appears to be that witnesses must sign, either upon the same sheet as the signature of the testator, or on some sheet physically connected with it, to constitute a valid will.*

*Id.* at 78 (emphasis added).

Because the witnesses had signed the envelope that contained the will and not the will itself, "the attestation or subscription by the witnesses was not on the same sheet of paper as the testatrix's own signature, nor was it upon a paper physically connected with that sheet." *Id.* at 79. In those circumstances, the Court held that "the formalities prescribed by law in the execution of wills ha[d] not been complied with to constitute a valid will[.]" *Id.* at 80.

**B.** **Attestation on a Page Separate from the Will Itself Versus Attestation on One Page of a Multi-Page Will**

Mrs. Castruccio advances a broad reading of *Shane*, under which a will is invalid if the testator and the witnesses sign on different pages of the will and those pages are not, in some way, physically connected to each other at the time of signing. We reject her reading.

In our view, *Shane* concerns cases in which a witness signs a document other than the will itself. In those circumstances, *Shane* holds that the will is invalid unless the separate document was, in some way, physically connected to the will at the time of signing. *Shane*'s physical-connection rule does not apply when the witnesses and the testator sign different pages of an internally-cohesive, multi-page will.

-15-

In explaining why the "weight of authority" supported its conclusion, the *Shane* Court relied prominently on *In re Baldwin's Will*, 146 N.C. 25, 59 S.E. 163 (1907). In that case, a witness signed the testator's will, but later transcribed it onto a better sheet of paper, which he signed outside the testator's presence. *Id.* at 26-27, 59 S.E. at 164. The witness sent the new document to the testator, who signed it and had it witnessed in his presence by a second witness. *Id.* at 27, 59 S.E. at 164. After the testator's death, his wife burned the original document and offered the new document for probate. *Id.* at 28, 59 S.E. at 165.

The North Carolina Supreme Court held that the new document was invalid because the statute required two witnesses, but the first had signed *before* the testator signed the new document and had not signed it in the testator's presence. *Id.* at 29, 59 S.E. at 165. It made no difference that the witness had properly attested a different document that had since been destroyed. *Id.* at 30, 59 S.E. at 165. "[A]lthough the contents of the papers may have been identical," the court explained, "there was no physical connection between the two." *Id.* The court concluded: "the attestation or subscription by witnesses must be on the same sheet of paper as that which contains the testator's signature, or else upon some paper physically connected with that sheet." *Id.*

In short, *Baldwin's Will* was addressing whether a will was valid when a necessary witness had properly attested the testator's signature only on a separate sheet, which was not in any way part of or "physically connected" to the probated document. In quoting *Baldwin's Will* for the proposition that an attestation "'must be on the same sheet of paper as that which contains the testator's signature, or else upon some paper physically

-16-

connected with that sheet[]'" (*Shane*, 138 Md. at 78 (citation omitted)), *Shane* was reinforcing its holding that, when a witness signs a document that is not part of the will itself, that document must be "physically connected" to the will for the will to be declared valid. Neither *Shane* nor *Baldwin* discussed whether an internally-cohesive, multi-page will was invalid if the testator and the witnesses signed different pages that were not "physically connected" to one another.

*Shane* cited a number of other, out-of-state cases, which confirm that the Court was concerned only with the problem of witnesses signing a document other than the will itself. In *In re Perrine's Will*, 109 Misc. 459 (N.Y. Surr. Ct. 1919), the Surrogate's Court for Montgomery County, New York, declined to admit a will to probate because the witnesses had signed an envelope that contained the will and had not signed the will itself. By contrast, in *Bolton v. Bolton*, 107 Miss. 84, 90, 64 So. 967, 967 (1914), a Mississippi court upheld a will where one of the witnesses had signed his name on a separate acknowledgement form, which the testator folded up with the will and handed to the person who drafted it. The court found an adequate physical connection between the will and the acknowledgment form because "the testator himself, knowing what [the witness's] signature was intended to be, handed the two papers to [the drafter], folded together, as his completed will." *Id.* at 91, 64 So. at 967. Like *Baldwin's Will* and *Shane*, both of these cases concern the problem of witnesses signing a document other than the

will itself; they do not concern internally-cohesive, multi-page wills on which the testator and the witnesses sign different pages.[10]

In addition to the out-of-state cases, *Shane* looked to § 336 of James Schouler's treatise, *The Law of Wills, Executors, and Administrators* (5th ed. 1915). Section 336 is titled "Attestation on a Different Paper." It states:

> [T]he attestation or subscription by witnesses must be on the same sheet of paper as that which contains the testator's own signature, or else upon some paper physically connected with that sheet. No particular mode of connection is prescribed by law; and hence the fastening by tape, by eyelets, by mucilage, or even by a pin, seems unobjectionable. Where papers are thus connected, the testator may sign on one paper and the witnesses on another, provided their intent corresponded.
>
> But attestation . . . by witnesses on a piece of paper, detached and separated from the will and the testator's signature, nor affixed in his presence to the paper at the time of execution, fails of compliance with the policy of our law; we may assume it to be void, as otherwise a door would open to much fraud and perjury.

Schouler, *The Law of Wills, Executors, and Administrators*, *supra*, § 336, at 414-15.

Read in isolation, this language might appear to invalidate a multi-page will if the testator and the witnesses signed on separate pages that were not physically connected to each other at the time of execution. If one reads no farther than the following section,

---

[10] *Shane* also cited *Soward v. Soward*, 62 Ky. 126, 1 Duv. 126 (1863), in which the witnesses signed the exterior of the will after the testator had folded it and sealed it with wax. The court invalidated that will because the witnesses did not "subscribe" it by signing at the foot of the document, as the Kentucky statute required. *Id.* at 132, 1 Duv. at 132. Although the Maryland statute in force at the time of *Shane* required the witnesses to subscribe the will (see *Shane*, 138 Md. at 77), ET § 4-102 has no similar requirement: it merely requires the witnesses to "sign" the will in the testator's presence.

however, it becomes clear that § 336 applies when the witnesses sign "a [d]ifferent [p]aper" from the will itself and that an entirely different rule governs multi-page wills.

Section 337 of the Schouler treatise is titled "Attestation where a Will is written on Several Sheets." Citing a number of authorities, including Lord Mansfield's decision in *Bond v. Seawell*, 3 Burr. 1773 (1765), Schouler stated that "if the will be written on several sheets, *whether fastened together or not*, and the last sheet alone is attested in form, the whole will is well executed, provided all the sheets were in the room." Schouler, *The Law of Wills, Executors, and Administrators*, *supra*, § 337, at 415 (emphasis added). He added: "if the several pieces of paper are connected in their provisions and form a connected series, and are brought in this shape before the attesting witnesses at the time of their subscription, a single attestation will suffice for the whole." *Id.*

It is telling that the *Shane* Court cited § 336 of Schouler, but did not cite § 337. The Court's selection of authorities confirms that *Shane* was concerned with the problem discussed in § 336 – attestation on a document separate from the will itself, such as the envelope in *Shane*. The Court was not concerned with the problem discussed in § 337 (and in this case) – attestation of a multi-page will.

### C.   <u>Attestation of a Multi-Page Will</u>

In the case of multi-page wills, a considerable body of authority comports with Schouler's assertion that the pages need not be affixed to each other, so long as there is an indication, internally or otherwise, that the pages belong together and that the testator intended as much. Most notably, in *In re Kaiser's Estate*, 150 Neb. 295, 299-300, 34

-19-

N.W.2d 366, 370 (1948), the testator signed the first page of a two-page will, and the witnesses attested his signature on the second. The Nebraska court upheld the will, reasoning that "[t]here is no statutory provision in this state designating just where a will shall be attested and subscribed by the witnesses, or forbidding the use of separate sheets in making a will, or directing how or that they shall be physically attached to each other in order to make a valid will." *Id.* at 305, 34 N.W.2d at 373. The court stressed that a will "'may be written on several sheets,'" that "'physical connection by mechanical, chemical, or other means is not required,'" that "'connection by the meaning and coherence of the subject matter is sufficient,'" and that in the absence of a physical connection, "'papers must be identified as one will by their internal sense.'" *Id.* at 306, 34 N.W.2d at 373 (quoting 68 C.J., *Wills* § 267, at 639).

Many courts and other authorities have reached a like conclusion. *See, e.g., In re Covington's Estate*, 348 Pa. 1, 15, 33 A.2d 235, 241 (1943) (upholding a holographic will consisting of three separate pages on the ground that "[f]or us to say that a will cannot be admitted to probate . . . unless the several papers of which it consists are physically fastened together . . . would be an act of legislation and a most unwise one for it would prevent the probate of papers which . . . are beyond all doubt the last will of the person . . . who signed them[]"); *In re Estate of Beale*, 15 Wis.2d 546, 555, 113 N.W.2d 380, 384 (1962) (upholding a 14-page will whose pages were not physically connected on the ground that "[t]here is nothing legally invalid in the execution of a will because the separate pages of the will have not been fastened together"); *accord Page on the Law of Wills*, § 19.15 (Rev. ed. 2003) (stating that "[i]f it is established by proper testimony that

-20-

[all sheets of a will] were present when the will was executed, it is by the weight of authority sufficient, although they are not connected physically or by the meaning of the words"); W.W. Allen, Annotation, *Validity of will written on disconnected sheets*, 38 A.L.R.2d 477 (upon review of about 100 cases, stating: "With one exception only, the cases have either held, declared, implied, or assumed that a will may be validly executed notwithstanding its having been written on two or more sheets which were not in any manner held or attached together at the time of execution").[11]

In fact, even before *Shane* was decided, the North Carolina court, whose decision figured prominently in the Court of Appeals' decision, had upheld the validity of a two-page will whose pages were detached from one another. In *In re Swaim's Will*, 162 N.C. 213, 215, 78 S.E. 72, 73 (1913), the court rejected the proposition that physical attachment is required. Instead, the court looked to whether the pages are "connected by their internal sense, by coherence or adaptation." *Id.* at 216, 78 S.E. at 73. Because "the papers, while separate, b[ore] intrinsic evidence that they were tacked together in the mind of the testator," the court upheld the validity of the will. *Id.*

In summary, *Shane* concerns cases in which a witness's attestation is on a document that is not part of the will itself: in those cases, *Shane* held that physical connection is required. *Shane*, however, did not hold that a multi-page will is valid only if the testator and witnesses sign on the same page of the will itself or, if they do not, if

_____

[11] The single exception cited in the A.L.R. annotation is an English probate case from 1908, in which "the court, without citation of authority on the point, said that the sheets must have been 'held or fastened' together at the time of execution," but that "a temporary holding together by thumb and finger was sufficient." *Id.* n.3.

the pages are in some way physically connected to one another. Consequently, we see no reason not to follow the great weight of authority nationwide, that such a will is valid as long the pages are connected by "'the meaning and coherence of the subject matter'" or they may "identified as one will by their internal sense.'" *In re Kaiser's Estate*, 150 Neb.at 306, 34 N.W.2d at 373 (quoting 68 C.J., *Wills* § 267, at 639).

### D.    The Alleged "Reaffirmation" of *Shane*

Mrs. Castruccio responds that Maryland courts have "reaffirmed" her expansive reading of *Shane*. She cites *Casson v. Swogell*, 304 Md. 641 (1985), and *Goroum v. Rynarzewski*, 89 Md. App. 676 (1991). Both cases mention *Shane*, but neither can legitimately be said to affirm, much less to "reaffirm," Mrs. Castruccio's reading of it.

*Casson* concerns the concept of "publication" of a will – the disclosure, by a testator, to the witnesses, that the document that they are signing is a will. *Casson* holds that "publication is not required for the valid execution and attestation of a will" when the testator signs in the witnesses' presence. *See Casson*, 304 Md. at 643; *see also id.* at 654 ("it is not necessary that the witness know [a document] is a will"); *id.* at 656 ("attestation may properly be made without the witness knowing the nature of the instrument"). According to *Casson*, a testator must acknowledge his or her signature or declare the document to be a will "only when the testator has signed the instrument out of the presence of the witnesses." *See id.* at 656.

After deciding those issues, the *Casson* Court addressed two additional issues "for the guidance of the trial court" on remand. *Id.* at 657. One of those issues involved a contention that the two-page will was "invalid because the signatures of both witnesses

d[id] not appear at the end of the will, and d[id] not appear in close proximity to one another at any particular place on the document." *Id.* The Court said that *Shane* "dealt with a similar issue." *Id.* The Court went on to quote *Shane*'s statements that the Maryland statute does not require the witnesses to sign "'at the end of the will or at any particular place of the will,'" but that "'the weight of authority'" "'appears to be that the witnesses must sign, either upon the same sheet as the signature of the testator, or on some sheet physically connected to it.'" *Id.* (quoting *Shane*, 138 Md. at 78). In concluding its "guidance" to the trial court, the Court stated that "[w]hile the fact that the two witnesses did not sign in the same place may bear on the jury question of whether the will is a fraud, it does not constitute a fatal variance from the required procedure for lawful execution." *Id.*

Because the Court's "guidance" concerned whether a will is invalid if the witnesses do not sign in close proximity to one another, we do not interpret *Casson* to hold that an internally-cohesive, multi-page will is invalid unless the witnesses sign on the same page as the testator or on a page that is physically connected to it. In this regard, we note that as support for its holding that a testator need not declare the instrument to be a will if he or she signs it in the witnesses' presence, *Casson* cited *Bond v. Seawell*, 3 Burr. 1775 (1773), the leading English authority for the proposition that the pages of a multi-page will need not be fastened together. *Casson*, 304 Md. at 650.[12]

---

[12] Mrs. Castruccio points out that in *Casson* the two-page will was "secured by staples at the top." *Casson*, 304 Md. at 644. The opinion, however, contains nothing to suggest that the staples were affixed at the time of execution, as Mrs. Castruccio would require, rather than at some other, later time.

*Goroum* affirmed the entry of summary judgment against a caveator who appears to have contended that the attestation page was not attached to the rest of the will when the testator signed it at a law office. See *Goroum*, 89 Md. App. at 679-81. "No one testified," however, "that the attestation page of this will was at any time unaffixed." *Id.* at 681. Instead, the caveator argued that the law firm's general practice was to have the documents signed before the pages were affixed to one another. In response, this Court held that the "general practice" did not give rise to the "clear and convincing evidence," required under the presumption of due execution, "that it was done that way in a specific instance." *Id.*

The *Goroum* Court distinguished *Shane*, observing that the attestation in that case "was written on the outside of an envelope in which the will was contained," while the attestation page in *Goroum* "was affixed" when the will was discovered in the register's office and when presented to the orphans' court. *Id.* at 682. This Court had no reason to consider whether *Shane* actually applied to an internally-cohesive, multi-page will, because no one raised the question of whether it did. For that reason, we do not interpret *Goroum* to hold that such a will is invalid unless the witnesses sign on the same page as the testator or on a page that is physically connected to it.

### E. The Policy of Preventing Fraud

Mrs. Castruccio stresses that a requirement of physical connection will effectuate a statutory purpose of preventing fraud in the preparation of wills. She does not, however, contend that a multi-page will is invalid unless all of its pages are in some way physically attached to one another. Instead, in her view, the only pages that must be physically

attached to one another are the pages on which the testator and the witnesses signed (if they sign on separate pages).

Yet if the purpose of the affixation requirement is to prevent fraud, it is difficult to understand why we would adopt a rule that requires only the signature pages of multi-page will to be attached to each other. Such a rule might prevent a witness from attesting a signature that he or she did not actually see the testator make, but it would not prevent a malefactor from switching out the substantive pages of a properly attested, multi-page will and replacing them with other, different pages that the testator never saw. As the Supreme Court of Pennsylvania observed:

> In these days when most wills are typewritten the fact that a sentence or a paragraph is partly on one page and partly on another would not obviate all possibility of fraud. For example, the last word on page one of such a 'looseleaf' will might read: 'I bequeath to my brother John Smith', and the words on the top of page two might read 'five thousand dollars'. No one could be certain that page two of the will as originally written had not been taken out and a new page two inserted, substituting the words five thousand for five hundred.

*In re Covington's Estate*, 348 Pa. at 11, 33 A.2d at 239.

Worse yet, Mrs. Castruccio's rule would lead to inconsistent and arbitrary results. Under her view, a document containing as many as 20 unconnected sheets, with a separate attestation page attached by a paper clip solely to the page before it, *might* pass muster. (We say "might" because Mrs. Castruccio was unable to tell the circuit court whether a paperclip would satisfy the "physical connection" rule.) On the other hand, in Mrs. Castruccio's view, a will of the same length, internally connected by staples, would be invalid if the drafter neglected to affix the attestation page to the others. Such a

-25-

formalistic imposition would run the risk of creating "needless trap[s] for the unwary testator[.]" *McGarvey v. McGarvey*, 286 Md. 19, 28 (1979).[13]

Finally, the physical-connection rule is fraught with vagueness and uncertainty. Would a paperclip or binder clip suffice? What if someone pinched the pages between her thumb and index finger while the witnesses signed? What if the pages were pressed together under a paperweight?

It is undoubtedly important to prevent fraud, but it is equally important to facilitate a person's right to dispose of property at death by removing uncertainty in the making of wills. *See Slack v. Truitt*, 368 Md. at 17. Mrs. Castruccio's proposed rule would do little to prevent fraud, but would greatly inhibit the right to dispose of one's property as one wishes.

### F. Pages Tacked Together in the Testator's Mind

Here, in contrast to *Shane* and the authorities on which it depends, Dr. Castruccio's will did not involve witness signatures that were "detached and separated from the will and the testator's signature." The signatures were not, for example, written across a sealed envelope that contained the entirety of the will, including the testator's signature. They were not in any way apart from the document itself.

---

[13] One need not strain to consider the unfortunate results that could occur when a will is drafted on word-processing software, as most undoubtedly are these days. Even if the places for the witnesses' signatures are initially adjacent to the testator's, the slightest revisions or additions to the body of the will may send them to a new page, presumably in violation of the strict rule that Mrs. Castruccio advances. The results may attend changes to the font, font size, or margins. Facing such potentially ruinous results, the testator might have to compose the document on a scroll.

Rather, the witnesses' signatures appear on the last of six consecutively-numbered pages in a document that, based on its pagination, was unmistakably intended to contain six and only six pages. The font and typeface of the document appear wholly consistent from one page to the next. The document contains 11 consecutively-numbered "Items" or paragraphs, two of which have consecutively-numbered subparagraphs. Page 1 of 6 concludes with Item 1, paragraph 3, and the following page begins with Item 1, paragraph 4. Page 2 of 6 concludes with Item 1, paragraph 11, and the following page begins with Item 11, paragraph 12. Page 3 of 6 ends during a clause that continues, without interruption, on page 4 of 6 ("I do direct that my Personal ¦¦ Representative deduct from the Estate . . . ."). Page 4 of 6 ends with Item 8, and the following page begins with Item 9.

Admittedly, page 5 of 6 ends with what appears to be an inarticulate sentence fragment ("The above named individual, does declare for his last Will and Testament this instrument, have here hereunto subscribed to have witness [sic] on the date **last mentioned above**, and at the location, and"), which does not connect grammatically to the language on the top of page 6 of 6 ("I do hereby attest that the testator to be of sound mind [sic], fully able to understand this instrument, and the testator voluntarily and freely did sign same"). (Emphasis in original.) The record, however, reflects that this same

language appears in Dr. Castruccio's previous will, which Mrs. Castruccio does not

challenge (because it gives her the residue of the estate if she survives her husband).[14]

In these circumstances, we conclude that the will, though inarticulate at times, is

an internally-cohesive document whose pages were "tacked together in the mind of the

testator." *In re Swaim's Will*, 162 N.C. at 216, 78 S.E. at 73.  The will, therefore, was not

invalid merely because its last two pages may not have been physically connected to one

another at the time of signing, as the circuit court assumed to be the case.  Accordingly,

the circuit court did not err in denying Mrs. Castruccio's cross-motion for summary

judgment and entering summary judgment against her on Issue F.[15]

## IV.    Mrs. Castruccio's Challenge to the Summary Judgment on All Other Issues

We now address Mrs. Castruccio's separate challenge to the trial court's grant of

the Estate's summary judgment on all other issues.  The court directed the entry of

---

[14] The will contains a number of other solecisms.  Item 1, paragraph 6, refers to property "real, personal or mix," rather than "mixed."  Item 9 refers to gifts of "personality" rather than of "personalty."  Just above his signature, Dr. Castruccio recites that the "instrument is intendant," rather than "intended," to be his last will and testament.  In the same clause, Dr. Castruccio states that he has "initial," rather than "initialed," each page.  Each of these errors appears in the prior will as well.

[15] In the second issue in her brief, Mrs. Castruccio argues that the court erred in directing the entry of summary judgment in the Estate's favor because of genuine disputes of material fact.  According to her brief, those disputes pertain solely to whether the pages of the will were stapled together at the time of signing: at her deposition, Kim Greiber testified that they were, while Mrs. Castruccio's attorney submitted an affidavit stating that the document on file with the register of wills had no staple holes.  Those disputes are immaterial because both we and the circuit court have assumed that the pages of the will were not stapled together or otherwise physically connected to one another at the time of signing.  *See Appiah v. Hall*, 416 Md. 535, 551, 554 (2010) (holding that disputes of fact were immaterial when plaintiff could not prevail even on assumption that disputes were resolved in her favor).

summary judgment after concluding that the presumption of due execution attached to the will and that Mrs. Castruccio had not discharged her burden of adducing clear and convincing evidence to overcome that presumption. Here, too, we see no error.

### A.     The Presumption of Due Execution in General

"[A] presumption of due execution attaches to a will that contains the testator's signature and an attestation clause signed by the witnesses." *Slack v. Truitt*, 368 Md. at 7-8 (collecting authorities) (footnote omitted). "[O]nce the presumption attaches, the burden of proof is on the caveator to show by clear and convincing evidence that the facts stated in the attestation clause are untrue." *Id.* at 8 (collecting authorities) (footnote omitted).

"[A]n attestation clause with a recital of the formalities required by law is desirable for the purpose of furnishing presumptive evidence when the subscribing witnesses are deceased or beyond the reach of process, and serving as a safeguard against the danger of imperfect recollection or deliberate misrepresentation of facts." *Van Meter*, 183 Md. at 618. In cases involving wills with adequate attestation clauses, Maryland courts have held that the presumption of due execution prevails, as a matter of law, over a witness's testimony that he did not actually sign the will in the testator's presence (*id.* at 619), over a witness's testimony that he could not recall anything about a will whose signing he had witnessed 17 years earlier (*see McIntyre v. Saltysiak*, 205 Md. 415, 420-21), and over a witness's testimony that she did not know that she was witnessing the signing of a will. *O'Neal v. Jennings*, 53 Md. App. 604, 608-09 (1983). In none of those cases did the witness's subsequent testimony rise to the level of the clear and convincing

evidence needed to overcome the presumption of due execution that arose from the presence of the attestation clause.

But while a proper attestation clause is sufficient to invoke the formidable presumption of due execution, "an attestation clause is not the *sine qua non* of the presumption of due execution." *Slack v. Truitt*, 368 Md. at 12. For example, notwithstanding the absence of a formal attestation clause, the Court of Appeals has held that the presumption of due execution applied to a one-page will, "written entirely in the testator's handwriting, and bearing the signature of the testator and two witnesses" whose signatures were "nearly adjacent" to the testator's and "beneath the words 'Witnessed By.'" *Id.* at 12. In reaching its decision, the Court cited and relied on out-of-state cases, such as *Mead v. Trustees of the Presbyterian Church*, 229 Ill. 526, 531-32, 82 N.E. 371, 373 (1907), in which the court held that an attestation clause was not necessary to invoke the presumption of due execution where the witnesses had affirmatively indicated that they were signing as witnesses. On the other hand, in *Groat v. Sundberg*, 213 Md. App. at 157, this Court distinguished *Slack* and held that the presumption of due execution did not apply when "the words 'witness,' 'witnessed by,' or some other variation d[id] not appear anywhere on the Document, much less next to the signatures of" the two witnesses.

### B.     The Presumption of Due Execution in this Case

In this case, it is debatable whether the will contains an adequate attestation clause that would trigger the presumption of due execution. The attestation clause arguably begins on page 5 of 6, with the confusing sentence fragment that does not connect

-30-

grammatically to the language on the top of page 6 of 6.  Furthermore, even if we were to

disregard the sentence fragment, the language on page 6 of 6 ("I do hereby attest that the

testator to be of sound mind [sic], fully able to understand this instrument, and the

testator voluntarily and freely did sign same") arguably fails to qualify as a proper

attestation clause: although the witnesses do attest to the signing of the will and to Dr.

Castruccio's testamentary capacity, they do not expressly recount the satisfaction of the

statutory requirement that they themselves signed "in the presence of the testator."  ET §

4-102.  *See McIntyre v. Saltysiak*, 205 Md. at 421 ("[t]he attestation of the will is the act

of the witnesses in seeing that those things exist and are done which the attestation clause

declares were done and *which the statute requires*") (emphasis added); *accord Slack v.*

*Truitt*, 368 Md. at 12.[16]

Nonetheless, the circuit court correctly held that the presumption of due execution

attached.  As with the will in *Slack v. Truitt*, each of the three witnesses to this will

---

[16] By contrast, the valid attestation clause in *Van Meter* read: "Signed, sealed, published and declared by Annie M. Van Meter, the above named testatrix, as and for her last will and testament, in the presence of us, who, at her request, *in her presence*, and in the presence of each other *have hereunto subscribed our names as witnesses*." *Van Meter*, 183 Md. at 616 (emphasis added).  The attestation clause in *McIntyre v. Saltysiak* read: "Signed, published and declared by the above named testatrix Marie C. McIntyre as and for her last will and testament, in the presence of us, who, at her request, and *in her presence*, and in the presence of each other *have hereunto subscribed our names as witnesses*." *McIntyre v. Saltysiak*, 205 Md. at 419 (emphasis added).  In *O'Neal v. Jennings*, the attestation clause read, in pertinent part: "The above Instrument was declared by the said Testatrix to be her last Will and Testament, and each of us, at the request of said Testatrix and *in her presence* and in the presence of each other, *signed our names as witnesses* thereto, at the end of the Will." *O'Neal v. Jennings*, 53 Md. App. at 605 (emphasis added).

signed their names under the word "WITNESS." Although the witnesses' signatures are not "nearly adjacent" to the testator's, as they were in *Slack v. Truitt*, they appear on the next, consecutively-numbered page. In addition, the witnesses' signatures follow a recitation in which they "attest" to the satisfaction of some relevant conditions, including Dr. Castruccio's signing of the document and his testamentary capacity. Like the will in *Slack v. Truitt*, therefore, "[t]he will in the case *sub judice* bears on its face every indicia of due execution." *Slack v. Truitt*, 368 Md. at 12.[17]

In her brief, Mrs. Castruccio argues, at some length, that the presumption of due execution did not attach. She does not, however, argue in the alternative that, if the presumption did attach, she adduced the requisite clear and convincing evidence to overcome it. Because we agree with the circuit court that the presumption of due execution did attach to this will, and because Mrs. Castruccio does not claim to have overcome the presumption, we conclude that the circuit court acted correctly in directing the entry of summary judgment against her on all other issues. *See Broadcast Equities, Inc. v. Montgomery County*, 123 Md. App. 363, 390 (1998) (noting that arguments not presented in a brief or not presented with particularity will not be considered on appeal).

---

[17] Although the will itself was sufficient to give rise to the presumption of due execution, it is worth noting that the three witnesses to Dr. Castruccio's will each testified, without contradiction, to the satisfaction of the statutory formalities. "The validity of the execution of a will depends, not upon an attestation clause, but upon conformity with the requirements of the statute, and also the testimony of the subscribing witnesses if they are produced and examined." *Van Meter*, 183 Md. at 617.

## V.     Spoliation

During the course of these proceedings, Mrs. Castruccio discovered that Darlene

Barclay had destroyed a flash drive in March or April of 2013, shortly after Dr.

Castruccio's death and the filing of the petition to caveat.  The flash drive contained

copies of documents that Ms. Barclay had typed while working in the Castruccios'

business office.  Ms. Barclay asserted that some of those documents contained

confidential information concerning her volunteer work with cancer survivors.  Other

documents concerned Dr. Castruccio and his businesses.  Ms. Barclay testified that,

before destroying the flash drive, she transferred the files that concerned Dr. Castruccio

onto another storage device.[18]

Ms. Barclay produced printed copies of files that concerned Dr. Castruccio.  She

did not, however, produce the device onto which she had copied those files.  Nor did she

produce her personal laptop, which, she said, had been stolen after she had lent it to one

of her daughters.[19]

Mrs. Castruccio engaged a computer forensic expert.  The expert examined the

computer that Ms. Barclay used at the Castruccio office.  On the basis of that

---

[18] Ms. Barclay disclosed the destruction of the flash drive during her deposition in a related case, in which Mrs. Castruccio challenged the *inter vivos* transfer of several properties from the Castruccios as tenants by the entireties to Ms. Barclay.  The trial court ruled against Mrs. Castruccio in that case, and this Court affirmed in an unreported opinion.  *Sadie Castruccio v. Estate of Peter Adalbert Castruccio*, No. 622, Sept. Term 2014 (filed Feb. 3, 2016).

[19] The daughter died unexpectedly just after Ms. Barclay lent her the computer.  Ms. Barclay claimed that the daughter's husband had taken the computer.  The daughter who died was not the daughter who witnessed the will.

examination, the expert opined that a file called "will" was present on the flash drive as of the date of Dr. Castruccio's death, but was not among the files produced by Ms. Barclay.

Claiming spoliation, Mrs. Castruccio moved for sanctions against Ms. Barclay and the Estate. Mrs. Castruccio argued that the missing file "might" reveal whether the will had been modified between September 29, 2010, when Dr. Castruccio appears to have signed it, and November 10, 2010, when Mr. Greiber filed it with the register of wills. At a minimum, Mrs. Castruccio asked the court to draw an adverse inference from the apparent destruction of the file.

The court scheduled a hearing on the motion for sanctions, and on other motions in a related case, for May 13, 2014. At that hearing, the Estate argued that the court should not entertain testimony from Mrs. Castruccio's expert until the Estate had had an opportunity to depose him. Although the record reflects that the court was already quite familiar with the expert's opinion and the substance of the motion, it agreed with the Estate and deferred a decision.

The court never formally ruled on the motion for sanctions as such, but in directing the entry of summary judgment against Mrs. Castruccio, the court denied the motion in substance and effect. *Frase v. Barnhart*, 379 Md. 100, 116 (2003) ("[i]t has long been recognized, in Maryland and elsewhere, that motions may be denied by implication"). Discussing the alleged destruction of evidence, the court stated: "There is no doubt that Ms. Barclay's ill-considered actions have made the discovery process more difficult." "However," given the witnesses' "undisputed testimony" concerning the

-34-

execution and attestation of the will, as well as "the totality of the record," the court could "not conclude that her actions would supply the clear and convincing basis upon which a trier of fact would be able to overturn the presumed Will." In other words, the court either declined to draw an adverse inference or concluded that any such inference could not give rise to the clear and convincing evidence necessary to defeat the presumption of due execution.

Mrs. Castruccio contends that the court erred in granting summary judgment without conducting an evidentiary hearing on her motion for sanctions. We disagree.

Under Rule 2-311(f), the court had no obligation to conduct a hearing on the motion for sanctions unless it rendered a decision that was dispositive of a claim or defense. The court, for example, would have had an obligation to conduct a hearing if it sanctioned Ms. Barclay or the Estate by directing the entry of judgment against them or, perhaps, by striking out one or more their defenses. At the hearing on May 13, 2014, however, the circuit court made it very clear that it had no intention of imposing a drastic sanction of that nature.

A trial court has broad discretion to fashion a remedy for spoliation. *See Klupt v. Krongard*, 126 Md. App. 179, 193 (1999). Appellate courts are reluctant to second-guess a trial judge's decision to impose, or not to impose, sanctions. *See id.*

While Ms. Barclay's actions certainly were ill-considered, the court had discretion to decide that an adverse inference, if any, could not overcome the presumption of due execution. Because Ms. Barclay candidly admitted that she had destroyed the flash drive (albeit in a misguided attempt to protect confidential information), the court had little

basis to conclude that she intentionally set out to destroy information relevant to Dr. Castruccio's estate planning. More important, Mrs. Castruccio could offer nothing more than conjecture about what the missing file "might" reveal. Conjecture cannot rise to the level of the clear and convincing evidence that is necessary to defeat the presumption of due execution.

In any event, "[e]ven in evidence spoliation cases, the fact finder is not permitted to find the destruction of evidence to be substantive proof that the evidence was unfavorable." *Bereano v. State Ethics Comm'n*, 403 Md. 716, 747 (2008). An adverse inference might impair the value of the Estate's evidence or give greater credence to Mrs. Castruccio's, but it would not, in itself, constitute affirmative evidence to refute the presumption of due execution. *See id.* The circuit court, therefore, did not err in granting summary judgment against Mrs. Castruccio.

> **JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

# APPENDIX

FILED

FEB 2 1 2013

REGISTER OF WILLS
ANNE ARUNDEL COUNTY, MD

## PETER ADALBERT CASTRUCCIO

I, **PETER ADALBERT CASTRUCCIO,** residing at 8229 Anglers Edge Trail, Glen Burnie, Maryland 21060, being of sound and disposing mind, memory and understanding, do hereby voluntarily make, publish and declare this instrument as his WILL IN TESTAMENT, thereby revoking any and all previous Wills and Codicils herein before made by me.

**WHEREAS,** it is my intention that on my death, all provisions of this instrument will constitute my Last Will In Testament; therefore, I do hereby declare the following:

## ITEM 1: RIGHTS AND OBLIGATIONS OF MY PERSONAL REPRESENTATIVE

I do hereby nominate, constitute and appoint my friend and counsel of many years, JOHN RALPH GREIBER, JR. to act as my Personal Representative for the administration of my Estate. To that affect, I do confer upon my Personal Representative the following rights and obligations:

1. I do hereby express the desire that my Personal Representative pay my just debts, final expenses and taxes, as soon as practical after my death. Firstly out of cash or liquid assets within my Estate, secondly by of the sale of any personal property in my Estate, and thirdly out of any real estate which is subject to my control and disposition.

2. I do hereby direct that my Personal Representative pay from my Estate, primarily from the residuary clause, all government, Estate or inheritance taxes, which may be due and payable by reason of my debt, without requiring contribution from anyone, who, in the absence of this exoneration, would be liable for payment of any portion of such taxes by virtue of the inheritance of the status of beneficiary.

3. I do hereby request that my Personal Representative be excused from the necessity of giving bond, unless absolutely required by law, and in that event, my Personal Representative shall give such bond in such minimum amount as would be required by law.

4. For any and all activities of my Personal Representative, I do hereby direct and request that he be relieved from the necessity of securing any previously obtained authority or subsequent ratification from any court, to perform the activities of Personal Representative.

5. My Personal Representative shall not be liable for any act or omission on his part which results from mere negligence, unless such activity by the Personal Representative constitutes fraud or willful misconduct.

6. My Personal Representative is hereby authorized to sell, lease, give option, or otherwise dispose of any and all property constituting a part of my Estate, whether real, personal or mix, at either public or private sale, all within the performance of the activities of the Personal Representative in the furtherance of administering my Estate.

7. I do hereby direct that my Personal Representative pay the cost of any and all funeral expenses and that these cost be paid out of the funds available in my Estate.

8. I do hereby authorize my Personal Representative to carry on my business for such a reasonable period of time as is necessary to bring the business to a orderly conclusion, or, if in the discretion of the Personal Representative, to continue to carry on such business for such a reasonable period of time as maybe appropriate for the eventual termination of my Estate, whereby I hereby authorize my Personal Representative to act with the same authority which I may have had in the conduct of such business.

9. I hereby authorize my Personal Representative to be empowered, by sale or otherwise, to deal with any personal property in my Estate, including stocks, bonds, securities or other similar matters, including the right to cast vote on such securities, either in person or by limited general proxy.

10. My Personal Representative is hereby authorized to enforce, compromise and/or litigate any claim against or in favor of my Estate.

11. My Personal Representative is hereby authorized to execute such guarantees and indemnity agreements binding upon my Estate, which, in his sole discretion, are appropriate to the handling of the administration of my Estate.

12. My Personal Representative is hereby authorized to prepare, file and execute in my name, or on behalf of my Estate any and all income or other Tax Returns.

13. My Personal Representative is hereby authorized to exercise any and all other powers which are reasonable and necessary for the proper handling of the administration of my Estate.

14. The enumeration of the foregoing powers are given for the purpose of enumerating some of the power of my Personal Representative, and not by way of limitations; therefore, any and all other powers permitted to Personal Representatives, under the laws of the State of my residence at the time of my death are expressly granted unto my Personal Representative.

## ITEM 2: SURVIVAL OF BENEFICIARY

If any beneficiary or beneficiaries under this instrument, and I should die in a common disaster or accident, or under such circumstances that it is doubtful as to which of us died first, then all provisions of this Will shall be effective as though any such beneficiary or beneficiaries shall have predeceased me. Further, in the event that any beneficiary under this Will shall die within (30) days after my death, then such beneficiary shall be deemed to have predeceased me, and I direct that the provisions of this Will shall be construed upon that assumption.

## ITEM 3: MEMORANDUM OF INTENT

All the bequests contained in my Will are absolute, it is my desire that any memorandum which I may leave, addressed to my Personal Representative, or to any beneficiary, indicating my desire with regard to the disposal of any item of my Estate, or manner of handling my Estate, shall be given due regard in so far as it is deemed practical in the sole discretion of my Personal Representative, and provided these directions are otherwise legal.

## ITEM 4: PRIOR DISTRIBUTION OF BEQUEST

As to any specific item of property, whether real, personal or mix, indicated to be left to a beneficiary, under the provisions of this Will, if such beneficiary shall have received all or part of any such asset prior to the final administration of my Estate, then I do direct that my Personal

Representative deduct from the Estate to be received by such beneficiary all such advances made to such beneficiary.

## ITEM 5: ADVANCES TO BENEFICIARIES

By his sole discretion, my Personal Representative shall be empowered to make such advances of assets to any such beneficiary mentioned herein, provided such advances made prior to final administration of this Estate, shall be taken to reduce the eventual distribution to any such beneficiary.

## ITEM 6: EFFECT OF UNSUCCESSFUL ATTEMPT TO VOID

In the event that any party, whether they are a beneficiary or not, shall file any proceeding in an attempt to void any and all provisions of this instrument, in that event, such party shall receive no benefits whatsoever from my Estate, in the event that such proceedings are unsuccessful.

## ITEM 7: CASH BEQUESTS

The following individuals shall receive cash bequests, prior to any bequest to my beloved wife:

1. **DARLENE BARCLAY**, 107 Foxhound Drive, Glen Burnie, Maryland, 21061, Eight Hundred Thousand Dollars ($800,000) which includes the Four Hundred Thousand Dollars ($400,000) already set aside with Wachovia.

2. **ADRIANA LANATA**, Via Trieste 45, Chiavari 16043, Italy, One Hundred Thousand Dollars ($100,000)

3. **ERNEST STINCHCOMB, JR.**, 1141-B Dicus Mill Road, Millersville, Maryland, 21108, One Hundred Thousand Dollars ($100,000)

## ITEM 8:

To my loving wife, Sadie, excluding the individual bequest made in Item 7, I leave the rest and remainder of my Estate to her should she one, survive me and two provided she has made and executed a Will prior to my death.

## ITEM 9: PERSONALITY

I have instructed my friend and Attorney of many years to draft a letter, which we have discussed, to advise my family members of my demise and reasons for the beneficiary distribution of my estate.

## ITEM 10: RESIDUARY CLAUSE

Should, at the time of my death, my beloved wife not have a valid Will filed with the Register of Wills in Anne Arundel County dated prior thereto these, I hereby give, devise and bequeath all the rest and residue of my Estate and property, whether imposition, expectancy will remainder, including all property over which I may have Power of Appointment to the following individuals share and share alike per stirpes and not per capita to DARLENE BARCLAY, 107 Foxhound Drive, Glen Burnie, Maryland, 21061.

ITEM 11.    As above noted, should any beneficiary be deceased at the time of his or her distribution under the proceeds of my last Will, it is my express intention that his or her share shall be distributed to his or her heirs equally.

**IN TESTIMONY WHEREOF**, I, the above mentioned testator have hereunto set my hands and seals to this six page instrument, and have initial each page hereof, which instrument is intendant to be my Last Will and Testament, this 29ᵗʰ day of September, 2010.

PETER ADALBERT CASTRUCCIO

SIGNED, SEALED, PUBLISHED AND DECLARE, BY PETER ADALBERT CASTRUCCIO.

The above named individual, does declare for his Last Will and Testament this instrument, have hereunto subscribed to have witness on the date **last mentioned above**, and at the location, and

I do hereby attest that the testator to be of sound mind, fully able to understand this instrument, and the testator voluntarily and freely did sign same.

WITNESS:

Signature, residing at:
11 Hull Avenue
Annapolis, MD 21403

WITNESS:

Signature, residing at:
7622 3rd Ave.
Glen Burnie, MD
21060

WITNESS:

Signature, residing at:
11 Hull Ave
Annap, MD 21403